**No. 25-50025**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

RAFAEL MARFIL; VERGE PRODUCTIONS, L.L.C.; ENRICO
MARFIL; NAOMI MARFIL; KOREY A. RHOLACK; DANIEL OLVEDA;
DOUGLAS WAYNE MATHES,

*Plaintiffs-Appellants,*

*v.*

CITY OF NEW BRAUNFELS, TEXAS,

*Defendant-Appellee*

---

On Appeal from the United States District Court
for the Western District of Texas, Waco Division

---

**APPELLANTS' BRIEF**

---

ROBERT HENNEKE
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
ctownsend@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700

J. PATRICK SUTTON
jpatricksutton@patricksuttonlaw.com
THE LAW OFFICE OF J. PATRICK SUTTON
1505 WEST 6TH STREET
AUSTIN, TEXAS 78703
TELEPHONE:    (512) 417-5903

CERTIFICATE OF INTERESTED PERSONS

No. 25-50025; *Marfil, et al v. City of New Braunfels*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

**Appellants:**

Rafael Marfil
Verge Productions, L.L.C.
Enrico Marfil
Naomi Marfil
Korey A. Rohlack
Daniel Olveda
Douglas Wayne Mathes

**Appellants' Counsel:**

Robert Henneke
Texas Bar No. 24046058
rhenneke@texaspolicy.com
Chance Weldon
Texas Bar No. 24076767
cweldon@texaspolicy.com
Christian Townsend
Texas Bar No. 24127538
ctownsend@texaspolicy.com
Texas Public Policy Foundation
901 Congress Avenue
Austin, Texas 78701
Telephone: (512) 472-2700
Facsimile: (512) 472-2728

**Trial & App. Counsel**:

J. Patrick Sutton
Texas Bar No. 24058143

ii

The Law Office of J. Patrick Sutton
1505 W. 6th Street
Austin, TX 78703
jpatricksutton@patricksuttonlaw.com
Telephone:      (512) 417-5903

**Appellees' Counsel:**    Ryan D. V. Greene
Texas Bar No. 240127
rgreene@terrillwaldrop.com
Terrill & Waldrop
810 W. 10th Street
Austin, Texas 78701
Telephone:      (512) 474-9100
Facsimile:      (512) 474-9888

**Trial Counsel:**    Ryan D. V. Greene
Texas Bar No. 24012730
rgreene@terrillwaldrop.com
Terrill & Waldrop
810 W. 10th Street
Austin, Texas 78701
Telephone:      (512) 474-9100
Facsimile:      (512) 474-9888

*/s/ Chance Weldon*
CHANCE WELDON
*Attorney of record for*
*Plaintiffs-Appellants*

**STATEMENT REGARDING ORAL ARGUMENT**

This case involves important questions about the scope of local authority over private property rights and whether property owners may ever successfully challenge arbitrary restrictions on those rights in court. The district court's decision below not only ignores this Court's prior decision in this case, it ignores binding precedents from this Court and the Supreme Court, and would make it significantly more difficult, if not impossible, to successfully challenge local land-use regulations. Appellants believe oral argument will help the Court in ensuring full deliberation of these important issues.

iv

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...............................................ii

STATEMENT REGARDING ORAL ARGUMENT.....................................iv

TABLE OF AUTHORITIES.............................................................viii

JURISDICTIONAL STATEMENT ....................................................... 1

ISSUES PRESENTED ...................................................................2

INTRODUCTION.........................................................................3

STATEMENT OF THE CASE ........................................................... 6

    *Background* ....................................................................... 6

    *New Braunfels Bans Short-term Rentals*...................................... 10

    *Appellants' Injuries* .............................................................. 13

    *The Initial Proceedings Below*...................................................17

    *The District Court Dismisses the Property Owners' Claims*..........18

    *This Court Reverses the District Court in Marfil I*.......................19

    *The Evidence on Remand* ........................................................21

    *The Parties' Arguments on Summary Judgment*............................22

    *The District Court Grants Summary Judgment in favor
    of the City Based on the "Same Logic" Rejected in Marfil I*..........23

SUMMARY OF THE ARGUMENT ...................................................24

STANDARD OF REVIEW.............................................................28

ARGUMENT.............................................................................28

I.    THE ORDINANCE ARBITRARILY RESTRICTS LIBERTY AND PROPERTY RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT.................................................................28

A.    The right to rent one's home to others is a liberty and property interest entitled to protection under the Fourteenth Amendment.........................................................29

B.    The uncontested facts in the record show that the City's ban on renting is not rationally related to a legitimate government interest ...........................................31

   1.    *The Ordinance is not rationally related to preserving residential character* ...............................32

      a.    *Short-term rentals are a residential use* .............34

      b.    *The facts on the ground show that short-term renting is both prevalent and compatible with New Braunfels neighborhoods* ......................................38

      c.    *The district court's single sentence explanation for why it believes short-term rentals undermine residential character is unpersuasive* .................................................40

   2.    *The City's late-breaking housing affordability argument is inconsistent with law, unsupported by the record, and would greatly expand the zoning authority beyond existing precedent* ........................................................42

II.   EVEN IF THE ORDINANCE COULD SURVIVE UNDER THE FOURTEENTH AMENDMENT, IT FAILS THE HEIGHTENED RATIONAL BASIS TEST REQUIRED BY ARTICLE 1, SECTION 19 OF THE TEXAS CONSTITUTION .........................................47

III.  THE CITY'S ARBITRARY RESTRICTIONS ON SHORT-TERM RENTALS VIOLATE THE EQUAL PROTECTION CLAUSE ......................52

IV.    THE DISTRICT COURT'S FAILURE TO CONSIDER THE PROPERTY OWNERS' AS-APPLIED CLAIMS IS REVERSABLE ERROR.................................................................................. 55

CONCLUSION ......................................................................................... 56

CERTIFICATE OF SERVICE ..................................................................... 59

CERTIFICATE OF COMPLIANCE ............................................................... 59

## TABLE OF AUTHORITIES

*Cases:*                                                                          *Page(s):*

*Am. Univ. v. Prentiss*,
    113 F. Supp. 389 (D.D.C. 1953)
    (adopted by reference and affirmed *Prentiss v. Am. Univ.*,
    214 F.2d 282 (D.C. Cir. 1954) ....................................................... 47

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................ 33

*Bradford v. State*,
    22 Ala. App. 171 (1927) .................................................................... 6

*Browning v. Town of Hollywood Park*,
    No. 23-CV-01485, 2023 U.S. Dist. LEXIS 234886,
    (W.D. Tex. Dec. 2, 2023) .................................................................. 9

*Bryan v. City of Madison*,
    213 F.3d 267 (5th Cir. 2000) .......................................................... 31

*Calcasieu Lumber Co. v. Harris*,
    77 Tex. 18, 13 S.W. 453 (Tex. 1890) .............................................. 30

*Carnegie v. Perkins*,
    191 N.C. 412 (1926) .......................................................................... 6

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ........................................................ 40, 47, 52, 53

*City of Dallas v. Dall. Short-Term Rental All.*,
    No. 05-23-01309-CV, 2025 Tex. App. LEXIS 743
    (Tex. App.—Dallas, 2025) ................................................................. 9

*City of Dallas. v. Stewart*,
    361 S.W.3d 562 (Tex. 2012) ............................................................ 49

*City of Grapevine v. Muns*,
    651 S.W.3d 317 (Tex. App.—Fort Worth, 2022) ............................ 30

*City of Sherman v. Wayne,*
   266 S.W.3d 34 (Tex. App.—Dallas 2008, no pet.) .......................... 52

*Euclid v. Ambler Realty Co.,*
   272 U.S. 365 (1926) ............................................... 32, 33, 35, 38, 44

*F.P. Dev., LLC v. Charter Twp. of Canton,*
   456 F. Supp. 3d 879 (E.D. Mich. 2020) ........................................ 37

*Harris County v. Carmax Auto Superstores Inc.,*
   177 F.3d 306 (5th Cir. 1999) ......................................................... 31

*Hignell-Stark v. City of New Orleans,*
   46 F.4th 317 (5th Cir. 2022) .............................................. 20, 40, 41

*Horton v. Handvil,*
   41 N.J. Eq. 57 (1886) ...................................................................... 6

*Hous. & T. C. R. Co. v. Dallas,*
   84 S.W. 648 (Tex. 1905) ................................................................ 50

*Hunt v. San Antonio,*
   462 S.W.2d 536 (Tex. 19741) ................................................... 53, 54

*In re Felt,*
   255 F.3d 220 (5th Cir. 2001) ........................................................ 33

*Jackson Court Condos., Inc. v. New Orleans,*
   665 F. Supp. 1235 (E.D. La. 1987) ............................................... 41

*Jackson Court Condominiums, Inc. v. New Orleans,*
   874 F.2d 1070 (5th Cir. 1989) ...................................................... 40

*JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n,*
   644 S.W.3d 179 (Tex. 2022) ............................................................ 8

*Lombardo v. Dallas,*
   73 S.W.2d 475 (1934) ............................................................... 48, 49

*Loretto v. Teleprompter Manhattan Catv Corp.,*
   458 U.S. 419 (1982) ...................................................................... 29

*Mahone v. Addicks Utility Dist.*,
    836 F.2d 921 (5th Cir. 1988) .............................................. 32, 34, 38

*Marfil v. City of New Braunfels*,
    70 F.4th 893 (5th Cir. 2023) ............................................. 3, 7, 20, 39

*Mayhew v. Town of Sunnyvale*,
    964 S.W.2d 922 (Tex. 1998) ........................................................ 49

*Mikeska v. City of Galveston*,
    451 F.3d 376 (5th Cir. 2006) ................................ 29, 31, 34, 43, 53

*Milliken v. Weatherford*,
    54 Tex. 388 (Tex. 1881) ........................................................ 31, 51

*Milton v. United States*,
    36 F.4th 1154 (Fed. Cir. 2022) .............................................. 48, 51

*Money v. City of San Marcos*,
    No. 24-50187, 2025 U.S. App. LEXIS 2897
    (5th Cir. Feb. 7, 2025) ........................................................... 48, 52

*Nectow v. Cambridge*,
    277 U.S. 183 (1928) ............................................................... 38, 40

*Palazzolo v. Rhode Island*,
    533 U.S. 606 (2001) ..................................................................... 51

*Patel v. Tex. Dep't of Licensing & Regulation*,
    469 S.W.3d 69 (Tex. 2015) .................................... 47, 49, 50, 51, 56

*Raymond v. Strickland*,
    124 Ga. 504 (1905) ......................................................................... 6

*Robinson v. Orient Marine Co.*,
    505 F.3d 364 (5th Cir. 2007) ....................................................... 28

*R.R. Com. of Texas v. Miller*,
    434 S.W.2d 670 (Tex. 1968) ........................................................ 53

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998) ..................................................... 36

*Spann v. Dallas,*
   111 Tex. 350, 235 S.W. 513 (1921) .............................. 29, 48, 49, 58

*St. Joseph Abbey v. Castille,*
   712 F.3d 215 (5th Cir. 2013) ........................................ 31, 32, 45, 54

*Tarr v. Timberwood Park Owners Ass'n,*
   556 S.W.3d 274 (Tex. 2018) .................................................. 8, 34, 35

*Terrace v. Thompson,*
   263 U.S. 197 (1923) ...................................................................... 30

*Texas Manufactured Hous. Ass'n v. City of Nederland,*
   101 F.3d 1095 (5th Cir. 1996) ...................................................... 44

*United Prop. Owners Asso.  v. Belmar,*
   185 N.J. Super. 163, 447 A.2d 933 (Super Ct. App. Div. 1982) ..... 34

*Vill. of Tiki Island v. Ronquille,*
   463 S.W.3d 562 (Tex. App.—Houston, 2015) ................................ 30

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n,*
   945 F.3d 206 (5th Cir. 2019) ........................................................ 31

*Wineman v. Phillips,*
   93 Mich. 223 (1892) ....................................................................... 6

*W. U. Place v. Ellis,*
   134 S.W.2d 1038 (Tex. 1940) .................................................. 49, 50

*Wynehamer v. People,*
   13 N.Y. 378 (1856) ....................................................................... 30

*Yates v. Milwaukee,*
   77 U.S. (10 Wall.) 497 (1870) ...................................................... 36

*Yur-Mar, L.L.C. v. Jefferson Parish Council,*
   451 Fed. Appx. 397 (5th Cir. 2011) ......................................... 40, 41

*Zaatari v. City of Austin,*
   615 S.W.3d 172 (Tex. App.—Austin 2019)....8, 30, 34, 35, 43, 45, 51

***Statutes, Rules & Ordinances:***

28 U.S.C

§ 1291 ................................................................................. 1
§ 1331 ................................................................................. 1
§ 1367 ................................................................................. 1

Tex. Local Gov't Code § 211.004 ........................................... 44

Fed. R. App. P. 4(a)(1)(A) ...................................................... 1

Austin, Tex., Ord. 20120802-122 (2012) ................................ 8

Dallas, Tex., Ord. No. 32473 (2023) ....................................... 8

Hollywood Park, Tex., Ord. No. 2045 (2023) ........................... 8

New Braunfels, Tex. Ord. No. 2011-37 ............................ 11, 12

***Other Authorities:***

Christina Sandefur, *Turning Homeowners into Outlaws: How Anti-Home Sharing Regulations Chip Away at the Foundation of an American Dream*, 39 U. Haw. L. Rev. 395, 396 (2017) ........................................................................ 6

City of New Braunfels, Living & Visiting, https://www.nbtexas.org/2993/Living-Visiting ................................ 11

Civil Rights Act, April 9, 1866, ch 31, § 1, 14 Stat. 27 .......................... 30

David McMilin, *8 Ways to Increase Your Home's Value*, Bankrate (Feb. 6, 2024), https://tinyurl.com/5hyuxsff ................................. 45

Edith Jones, Judge, *Marfil v. New Braunfels*, Oral arg. at 20:58-21:48, available at, http://tinyurl.com/mrx5tb7f ................................. 3, 7

Jake Wegmann & Junfeng Jiao, *Taming Airbnb: Toward Guiding Principles for Local Regulation of Urban Vacation Rentals Based on Empirical Results from Five US Cities*, 69 Land Use Policy, 494 (Dec. 2017) .............................................. 47

John Bonura, *Housing Affordability: Overview and Model Legislation*, Texas Public Policy Foundation (Mar. 2024), https://tinyurl.com/bdh4m2ds ...................................................... 45

Karen Horn & Mark Merante, *Is Home Sharing Driving Up Rents? Evidence from Airbnb in Boston*, 38 J. Housing Econ. 14, 15 (2017) ............................................................. 46

Kyle Baron, et. al. *The Effect of Home-Sharing on House Prices and Rents: Evidence from Airbnb*, SSRN (March 4, 2020) ............ 46

Lyman H. Cole, Tourist Homes and Cabins as Inns, 13 Ind. L.J. 242, 242 n.1 (1938) ..................................................... 7

Robin Catalano, How the Forgotten Tourist Homes of the 1930s Predicted Airbnb, The Washington Post (Nov. 9, 2024), https://tinyurl.com/4uhhabjy ...................................................... 6, 7

Tex. Att'y Gen. Op. No. KP-0308 (2020) at *2, https://tinyurl.com/yzw55jmb ...................................................... 30

Victor H. Green, The Negro Motorist Green Book 67 (1949) ................... 7

William Blackstone, *Commentaries on the Laws of England*, 1:134 (1765) ............................................................. 29

## JURISDICTIONAL STATEMENT

Appellants' claims involve facial and as-applied challenges to a municipal ordinance under the Texas and United States Constitutions. The district court had jurisdiction over Appellants' federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over Appellants' state law claims under 28 U.S.C. § 1367.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On January 10, 2025, the district court entered an order and judgment denying Appellants' motion for summary judgment and granting Appellee's motion for summary judgment. ROA.2152. This order disposed of all issues in this case and constituted a final judgment of a United States District Court. The Notice of Appeal was timely filed on January 13, 2025, pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A). ROA.2153.

## ISSUES PRESENTED

1. Is every local ban on short-term rentals in residential zones *per se* constitutional, regardless of the facts of the locality (as the district court held below) or must courts take local factors and evidence into account, as this Court previously held in this case?

2. Did the robust evidence provided by the Appellants effectively rebut the City's claimed justifications for its ordinance here?

3. Did the district court err by holding, without citation to any authority, that Texas law forbids property owners from challenging the rationality or burdensomeness of land-use ordinances under the Texas Constitution, if they were not engaged in that land use before the challenged ordinance went into effect?

4. Did the district court err by granting summary judgment against Appellants' Equal Protection and as-applied challenges without a single sentence of discussion?

## INTRODUCTION

"[I]f these guys are across the street from you know some kind of retail or cafe or something, or if they're fifty feet from Schlitterbahn, or they are next door to a short-term rental, what makes your idea rational?"  Oral Argument at 20:58, *Marfil v. City of New Braunfels*, 70 F.4th 893 (5th Cir. 2023) (hereinafter *Marfil* I) (Edith Jones, J.) http://tinyurl.com/mrx5tb7f.

This case raises fundamental questions about when, if ever, a constitutional challenge to a local land-use ordinance can be successful in federal court.  It also raises important questions about whether this Court's orders have any effect on district courts on remand.

Like generations of New Braunfels homeowners before them, Appellants (the Property Owners) seek to rent their homes to other families on a short-term basis while they are not using them.  But the City now makes this traditional, residential use of property illegal.

The Property Owners believe this arbitrary restriction on property rights violates the United States and Texas Constitutions.  Indeed, similar ordinances have been struck down or enjoined in other Texas cities, including Austin, Dallas, Dickinson, Hollywood Park, and Tikki Island.  As those courts have largely recognized, short-term rentals are a judicially recognized residential use.  And despite contrary arguments from city attorneys, the record in every Texas case thus far has shown

3

that short-term rentals do not cause more nuisances or other disruptions than other residential uses.

Nevertheless, four years ago, the district court dismissed the Property Owners' case. According to the district court, it did not matter if short-term rentals are a judicially recognized "residential use," or whether short-term rentals have any actual impact on communities. It was sufficient under rational basis scrutiny that the City *claimed* that short-term rentals *could* have impacts on residential character and that a segment of the community spoke out in opposition to new short-term rentals. As such, any evidence of actual impacts on the ground was irrelevant.

This Court rejected this nihilistic approach to rational basis scrutiny. As this Court explained, when it comes to restrictions on private property rights, local evidence matters. A few "conclusory paragraphs" quoting *ipse dixit* from the City is not sufficient. This Court therefore vacated the district court's decision and remanded for discovery.

Almost two years later, the Property Owners are back in the same boat. Despite the production of thousands of pages of evidence, hundreds of pages of briefing, and multiple state court opinions showing that short-term rentals are a residential use with no meaningful impact on residential communities, the district court once again refused to consider evidence. Instead, in an even more "conclusory" opinion than the first

time around, the court again held that banning short term rentals is rationally related to preserving residential character because: (1) short-term rentals allegedly affect residential character by definition; and (2) it is undisputed that a segment of the city made statements opposing short-term rentals.

Putting aside that decision's direct conflict with this Court's prior holdings in this case, the district court's approach to rational basis scrutiny simply cannot be the law. If mere local opposition and unsupported declarations from the City were sufficient to provide a rational basis for a zoning ordinance, then *every* zoning ordinance—by definition—is constitutional.

Whatever one might think about short-term rentals, they do not justify tearing down the already meager protections for private property rights that exist under this Court's precedents. If it is truly as obvious as some cities suggest that short-term rentals are a blight on communities, then it should be easy for a city to surpass the low bar of traditional rational basis scrutiny, based on the facts in the record. If not, then that city has no business prohibiting a traditional residential use of property. The Constitution does not allow a city to eradicate fundamental property rights simply because it really wants to.

As explained below, the evidence does not support the City's position in this case. The district court's judgment should be vacated and

reversed, and summary judgment should be granted to the Property Owners. Five years of litigation is enough.

## STATEMENT OF THE CASE

### *Background*

Short-term rentals are nothing new. Americans have been renting out homes on short-term leases for generations. Christina Sandefur, *Turning Homeowners into Outlaws: How Anti-Home Sharing Regulations Chip Away at the Foundation of an American Dream*, 39 U. Haw. L. Rev. 395, 396 (2017). A quick survey of Lexis-Nexis shows numerous examples of week-to-week rentals of houses across the country going back more than a century. *See e.g.*, *Bradford v. State*, 22 Ala. App. 171, 171 (1927) (discussing contract for weekly rent of a furnished house); *Carnegie v. Perkins*, 191 N.C. 412, 413 (1926) (weekly rental of part of a house); *Raymond v. Strickland*, 124 Ga. 504, 506 (1905) (discussing weekly rental contract for house in Georgia); *Wineman v. Phillips*, 93 Mich. 223 (1892) (weekly rental contract for a house in Detroit); *Horton v. Handvil*, 41 N.J. Eq. 57, 61 (1886) (weekly rental contract).

With the advent of widely accessible automotive travel in the mid-20th century, travelers seeking an affordable alternative to traditional hotels used short-term rentals, often called tourist homes, as places to stay when visiting a community. Families began to rent out rooms or extra houses to these travelers for a few nights at a time. Robin Catalano,

*How the Forgotten Tourist Homes of the 1930s Predicted Airbnb*, The Washington Post (Nov. 9, 2024), https://tinyurl.com/4uhhabjy.

By 1938, 200,000 private homes had opened their doors and spare rooms to tourists and more than 400,000 small homes were built for the purpose of providing lodging for travelers.  Lyman H. Cole, *Tourist Homes and Cabins as Inns,* 13 Ind. L.J. 242, 242 n.1 (1938).

In the Jim Crow South, short-term rentals provided an important avenue for African Americans who were barred from traditional hotels to travel safely.  Indeed, Victor Green's famous "Green Book"—an essential resource for black travelers featuring the location of more than 11,000 sites world-wide that were black-friendly—listed numerous short-term rental opportunities in residential areas across Texas.  The 1949 version listed four such houses in Austin alone.



Victor H. Green, The Negro Motorist Green Book 67 (1949).

Today, short-term rentals increasingly provide "one of the few ways in which people of modest means can make money off of real estate." Oral Argument at 23:27, Marfil, 70 F.4th 893 (Edith Jones, J.) http://tinyurl.com/mrx5tb7f.    They also allow individuals, like the

7

Appellants in this case, an opportunity to maintain ties to communities that they grew up in even when they no longer live in that city. ROA.1616 (R. Marfil Dep. 49:15–24).

Historically, short-term leases have been viewed as an acceptable residential use of property in Texas. *See JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 185 (Tex. 2022); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 291 (Tex. 2018). Indeed, prohibitions on short-term rentals largely did not appear in Texas until well into the twenty-first century. *See, e.g.*, Austin, Tex., Ord. No. 20120802-122 (2012); Dallas, Tex., Ord. No. 32473 (2023); Hollywood Park, Tex., Ord. No. 2045 (2023).

For the most part, these cities claimed that short-term rental bans were necessary to preserve neighborhood character, preserve property values, or abate alleged nuisance behavior at short-term rentals. *See id.* But when challenges to these ordinances have been raised, the evidence has not supported these cities' claims.

For example, in Austin, the City held working groups over several years and conducted multiple studies before passing its ordinance. Yet, at the end of it all, the court found that "nothing in the record" supported the City's claims that banning short-term rentals was related to nuisance abatement. *Zaatari v. City of Austin*, 615 S.W.3d 172, 189–90 (Tex. App.—Austin 2019) (emphasis added). To the contrary, the City's own studies confirmed that short-term rentals produced *"significantly fewer"*

8

nuisance complaints *per-capita* than long-term housing, and a tiny number of complaints overall. *Id.* (emphasis added).

In Dallas, politicians likewise made claims about the potential for nuisances, and the city again conducted a study. Yet, looking at the city's own data, the court again concluded the evidence did not show a rational relationship between short-term rentals and "excessive traffic, noise, density, or other nuisances that the City claims justify the STR Ordinances." ROA.1095–96 (*Dallas Short-Term Rental Alliance v. City of Dallas*, No. DC-23-16845 *5–6 (District Court of Dallas County, Dec. 6, 2023)). To the contrary, the city's study showed that that "over 90 percent" of short-term rentals had never had a single complaint, much less a citation, and that there was no "meaningful" difference between short-term rentals and other residential uses. ROA.1074 (Dallas Study). That judgment was affirmed by the court of appeals last month. *City of Dallas v. Dall. Short-Term Rental All.*, No. 05-23-01309-CV, 2025 Tex. App. LEXIS 743 (Tex. App.—Dallas, Feb. 7, 2025).

In Hollywood Park, the city likewise claimed that banning short-term rentals was rationally related to nuisance abatement. ROA.1170 (*Browning v. Town of Hollywood Park*, No. 23-CV-01485, 2023 U.S. Dist. LEXIS 234886, *5 (W.D. Tex. Dec. 2, 2023)). But again, when challenged, it could produce no evidence to support that claim. As such, the court concluded that there was no factual basis "in the record to support the

conclusion that a ban on short-term rentals would resolve [nuisance] concerns." ROA.1170. That case has now settled.

Studies from around the country have come to similar results. A multi-year study of multiple cities in California found that short-term rentals received fewer nuisance complaints *per capita* than other residential properties. ROA.1105. Indeed, in several cities, short-term rentals had no reported nuisance incidents at all. ROA.1104. Moreover, of the several cities studied, *not one* had a higher average rate of nuisances at short-term rentals across the study period. ROA.1113. The study concluded that these findings "strongly suggest that the presence of [short-term rentals] do[es] not result in heightened nuisance issues." ROA.1113. And that "the presence of [short-term rentals] may actually reduce the rate of nuisance complaints." ROA.1118.

A study in New York likewise found that the entry of short-term rentals in an area is associated with a "significant *decrease*" in residential noise. ROA.1120 (emphasis added).

As explained below, the history of the challenged ordinance follows this pattern.

### *New Braunfels Bans Short-term Rentals*

Like many Texas cities, short-term rentals have been prevalent in New Braunfels neighborhoods for decades, if not longer. Long considered a tourist destination, the City is home to the world famous Schlitterbahn Waterpark, Texas's oldest dancehall, Texas's oldest bakery, nearby

10

Natural Bridge Caverns, the Texas Ski Ranch, and a 10-day annual sausage festival known as Wurstfest. City of New Braunfels, Living & Visiting, https://www.nbtexas.org/2993/Living-Visiting. Given these attractions, a quick google search unsurprisingly shows advertisements for short-term rentals in New Braunfels neighborhoods as early as the 1960s. ROA.1177–1180 (newspaper listings of individuals renting their home short-term). Today, there are at least 700 short-term rentals in the City. ROA.1188 (Looney Dep. 27:21–25); ROA.1260.

Eventually, however, certain interest groups within the city pushed for a change. As was true in other cities, the City conducted several "workshops" where these groups suggested ways the City could dictate lease terms for private property owners. ROA.1223–1224 (Looney Dep. 168:22–169:8). And, as was true in other cities, advocates for restricting short-term rentals argued that an ordinance was needed to preserve residential character, to prevent nuisances, and to preserve property values. ROA.73. But, as was true in other cities, the City has since admitted that short term rentals are a residential use ROA.858 (City's Motion for Summary Judgment); ROA.1196 (Looney Dep. 58:5–12), that it had no data showing that short-term rentals cause nuisances, ROA.1204 (Looney Dep. 91:25–92:22), and that it had no data showing that short-term rentals had any effect on property values in New Braunfels. ROA.1226–27 (Looney Dep. 179:19–181:1).

11

Nevertheless, the City adopted Ordinance. No. 2011-37 ("the Ordinance") prohibiting all short-term rentals in residential areas. ROA.82. In a bit of political bargaining, the Ordinance grandfathered certain pre-existing short-term rentals in residential areas—effectively creating a short-term rental monopoly for a select group of homeowners. New Braunfels, Tex. Ord. No. 2011-37, §5.16(c)(4).

The City also left itself a vehicle to make exceptions. ROA.1229 (Looney Dep. 189:25–192:7). Under the City's ordinances, a property owner may petition to have a single residential lot rezoned commercial, thus opening the door to apply for a short-term rental permit. ROA.1229 (Looney Dep. 189:20–24). But the process is costly, time consuming, and depends largely on the whims of neighbors and the City Council. ROA.129–1231. Even if an applicant meets all of the objective requirements for rezoning, objections from a handful of neighbors can trigger a super-majority vote requirement. ROA.1230 (Looney Dep. 194:3–6). And the application may be denied by the City Council for any reason. ROA.1231 (Looney Dep. 197:8–18). Indeed, neighborhood objections alone have been known to kill an application. ROA.1483. The rezoning process therefore acts as little more than a tool to ensure that the "right people" can still exercise their leasing rights, but the "wrong people" cannot.

12

*Appellants' Injuries*

The Property Owners in this case are not part of the lucky few allowed by the city to exercise their full leasing rights.

Rafael Marfil was born in New Braunfels, but he lives and works elsewhere in Texas. ROA.1616 (R. Marfil Dep. 49:15–24). He purchased the house at issue in this case because he wants to own property in the city and remain connected to the community. ROA.1616. Making the property available for short-term renting allows Rafael to afford the house, maintain flexibility in being able to use the house when he wants, and also offer others an opportunity to visit his hometown. ROA.1616. The house lies directly across from the entrance to Schlitterbahn, one of the largest waterparks in the country, and is surrounded by other high traffic uses including a diner, hair-cut studio, day spa, and bakery. ROA.1235–36 (Looney Dep. 216:21–219:25).

In 2019, Rafael petitioned to have the property re-zoned so that he could lawfully rent the property out short-term. ROA.1235 (Looney Dep. 214:25—216:17). The City admits that using the property as a short-term rental would not "undermine a sense of community." ROA.1238 (Looney Dep. 225:10–15). Neither would it produce other factors that would "substantially affect the public health, safety, morals, or general welfare." ROA.1238 (Looney Dep. 225:10–15). Nevertheless, after neighboring property owners objected, the City denied Rafael's

13

application to rezone his property for use as a short-term rental. ROA.1235 (Looney Dep. 215:5-216:16).

Rafael's brother and sister-in-law, Enrico and Naomi Marfil, have similar desires. ROA.947 (E. Marfil Dep. 45:15–25). Making their property available for short-term renting allows them to remain a part of New Braunfels without leaving the house vacant when they are not using it. ROA.948 (E. Marfil Dep. 46:1–10). Like Rafael, Enrico and Naomi's house is also right across the street from Schlitterbahn and is also surrounded by other high traffic uses including a diner, hair-cut studio, day spa, and bakery. ROA.1235–36 (Looney Dep. 216:21–219:25). There are at least four other short-term rentals within a few hundred feet of the home. ROA.1237 (Looney Depo 221:10–19).

In 2019, Enrico and Naomi petitioned to have the property re-zoned so that they could lawfully rent the property out short-term. ROA.1237 (Looney Dep. 221:15–16);ROA.1526. The City admits that using the property as a short-term rental would not "undermine a sense of community," or produce other factors that would "substantially affect the public health, safety, morals, or general welfare." ROA.1238 (Looney Dep. 225: 10–15). Nevertheless, after neighboring property owners objected, the City denied the Marfils' application to rezone the property for use as a short-term rental. ROA.1235 (Looney Dep. 215:5–216:16); ROA.1526.

14

Korey Rohlack owns property at 1265 E. Common Street. ROA.1727 (Rohlack Dep. 13:18–19). When he bought the property in 2017, it was an unimproved lot. ROA.1727 (Rohlack Dep. 13:18–19). Korey is an airline pilot. ROA.1733 (Rohlack Dep. 39:25–40:1). He wants to build a home that he can rent out while he is away for work and use when he returns. ROA.1733 (Rohlack Dep. 39:25–40:1). Korey's lot is in a high traffic area surrounded by businesses. ROA.1233 (Looney Dep. 206:7–8); ROA.1480. Within a block of the home is a strip center, an Exxon gas station, a sports bar, and the freeway. ROA. 1232-33 (Looney Dep. 204:7–206:4); ROA.1480. Given Korey's work, he applied to have the property rezoned for short-term rental use so that he could build a house and rent it when he is away. ROA.1733 (Rohlack Dep. 39:20–40:6). City staff concluded that the request was "compatible with neighboring residential development" and that there should be no other factors that would "substantially affect the public health, safety, morals, or general welfare." ROA.1234 (Looney Dep. 210:23–211:8). Nevertheless, after some neighboring property owners objected to the proposal, the City permanently tabled the application. ROA.1481. Because of the City's ban on short-term rentals, Korey's lot is still undeveloped. ROA.1727 (Rohlack Dep. 13:18–19).

Daniel Olveda owns a house at 1267 Common Street. ROA.1763 (Olveda Dep. 4:17). He originally purchased his house to be his primary residence. ROA.1764 (Olveda Dep. 9:13–14). After living in the house

15

for several years Daniel got engaged and moved to another house with his fiancée in 2019. ROA.1766 (Olveda Dep. 14:19–25). However, Daniel would like to keep his house in New Braunfels so that he can continue to visit the city with friends and family and eventually pass the house on to his daughter. ROA.1769 (Olveda Dep. 29:1–4). In order to do so, he would like to rent the house out on short-term leases. ROA.1770 (Olveda Dep. 32:17–22). Long-term leasing typically does not cover his expenses on the property. ROA.1769 (Olveda Dep. 27:19–21). Daniel has also struggled with keeping his long-term tenants at the property. ROA.1767-68 (Olveda Dep. 21:11–22:7).

On the advice of City officials Daniel applied for rezoning to allow him to lease the house on a short-term basis. ROA.1767–68 (Olveda Dep. 21:11–22:7). City staff concluded that the request was "compatible with neighboring residential development" and that there should be no other factors that would "substantially affect the public health, safety, morals, or general welfare." ROA.1234 (Looney Dep. 210:23–211:8); ROA.1482. Nevertheless, after some neighboring property owners objected to the proposal, the City permanently tabled the application. ROA.1481.

Douglas Wayne Mathes also owns property that he would like to lease out on a short-term basis. ROA.1794 (Mathes Dep. 20:21–23). Douglas bought the house in 2011 for his family's use and to rent out short-term. ROA.1794 (Mathes Dep. 20:21–23). The house is approximately fifty feet from the entrance to Schlitterbahn and next-door

16

to a grandfathered short-term rental that shares a yard with his house. ROA.1239-40 (Looney Dep. 229:13–230:9, 233:8–10). In the summer, the line for the Master Blaster tube slide overlooks his house. ROA.1817 (Mathes Dep. 111:14–112:1). Douglass has had significant trouble with maintaining long-term renters. ROA.1798 (Mathes Dep. 35:15–36:1). Nevertheless, with New Braunfels' ban on short-term rentals in his area, Douglas is unable to rent his property for less than 30 days. ROA.1794–95 (Mathes Dep. 21:25–22:3).

### *The Initial Proceedings Below*

The Property Owners filed suit alleging that the City's ban on short-term rentals unreasonably denied them the use of their property in violation of the Due Process Clause of the Fourteenth Amendment, the Due Course of Law provision of the Texas Constitution (Article 1, Section 19) as well as the Equal Protection clauses of the United States and Texas Constitutions. ROA.487–500 (first amended complaint).

In particular, the Property Owners argued that short-term rentals are a well-established and judicially recognized residential use in Texas, and evidence shows that short-term rentals do not produce more disturbances than other residential uses. ROA.493–98. As such, the Property Owners argued that the City's decision to prohibit short-term rentals from all residential areas—including areas adjacent to commercial uses—was unreasonable and not supported by the police power. ROA.493–98.

17

The City filed a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). ROA.54–72. The City did not dispute that short-term rentals have been held to be consistent with residential use by the Texas Supreme Court. ROA.59–60. Nor did the City dispute that it had *no evidence* that short-term rentals are incompatible with residential use.

Instead, the City argued that the Property Owners' claims should be dismissed because, under rational basis scrutiny, zoning decisions are allegedly not subject to *any* factual rebuttal. ROA.58. It was enough that *some* members of the New Braunfels community "vigorously oppose" short-term rentals and that the City believes banning short-term rentals will preserve the residential character of neighborhoods. ROA.173.

### *The District Court Dismisses the Property Owners' Claims*

The City's motion to dismiss was assigned to the Magistrate Judge, who granted the motion. ROA.286–303. In what this Court would later characterize as a "few conclusory paragraphs" the Magistrate held that dismissal of the Property Owners' due process claims was appropriate for three reasons: (1) short-term rentals are inconsistent with residential character on their face (ROA.298); (2) it is undisputed that "some members of the New Braunfels community" oppose short-term rentals (ROA.299); and (3) it was enough that the City believed that banning short-term rentals would reduce nuisances, regardless of whether short-term rentals create nuisances or not. ROA.288.

The Magistrate's approach to equal protection claims was similarly dismissive. He concluded that it was irrelevant whether there was any meaningful factual difference between short-term rentals and other residential uses, because when crafting zoning ordinances "municipalities must draw the line somewhere." ROA.300.

Finally, because the Magistrate did not see any "meaningful distinction" between rational basis scrutiny under the Texas Constitution and the Fourteenth Amendment, he did not engage in any separate analysis of the Property Owners' claims under the Texas Constitution. ROA.296, 298.

Almost thirteen months later, the District Court adopted the Magistrate's opinion in full without comment.

### *This Court Reverses the District Court in Marfil I*

The Property Owner's subsequently appealed to this Court. The Property Owners argued that: (1) short-term rentals are a residential use, and therefore not inherently inconsistent with residential character; (2) the evidence was likely to show that short-term rentals did not cause more disturbances than other residential uses; (3) that neighborhood opposition, standing alone, is not a sufficient basis for a zoning ordinance; and therefore (4) under both the Texas and United States Constitutions, dismissal prior to collecting facts was improper. Appellants' Brief, *Marfil v. City of New Braunfels*, 70 F.4th 893 (5th Cir. 2023) Dkt. No. 24, http://tinyurl.com/4w6bk3an.

19

The City responded that dismissal prior to the collection of evidence was proper because: (1) this Court's decision in *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 328–29 (5th Cir. 2022), allegedly held that short-term rental bans were rationally related to the preservation of residential character as a matter of law; (2) short-term rentals negatively affect residential character by definition; (3) it was undisputed that some members of the New Braunfels community opposed short-term rentals; and (4) because these claims were definitional "no amount of evidence" about nuisances or local conditions could change the outcome of the case. Appellee's Brief, *Marfil*, 70 F.4th 893, Dkt. No. 51. As the City put it at oral argument, whether the City allows short-term rentals is a purely legislative judgment, not subject to courtroom factfinding. Oral Argument at 22:16, *Marfil*, 70 F.4th 893 http://tinyurl.com/mrx5tb7f.

This Court agreed with the Property Owners that local evidence mattered. ROA.440 (*Marfil*, 70 F.4th at 893). Just two weeks after oral argument, this Court vacated the district court's judgment in a one paragraph published opinion. *Id.* The Court concluded that "based on the complaint's well-pled allegations, Plaintiffs are entitled to engage in discovery in an attempt to surmount the currently high bar for challenging local zoning ordinances under the Constitution." *Id.* It then remanded for the collection of evidence. *Id.*

20

## *The Evidence on Remand*

On remand, both parties sent and responded to discovery and conducted depositions. The evidence confirmed what the Property Owners had alleged in their complaint.

New Braunfels developed under cumulative zoning and therefore many neighborhoods are effectively mixed-use. ROA.1184. Short-term rentals have been part of New Braunfels for decades. ROA.1177–80. Indeed, there are currently over 700 short-term rentals in the City. ROA.1260. The Property Owners' homes are in high traffic areas adjacent to commercial uses like Schlitterbahn. ROA.1239-40. And the City has no evidence that short-term rentals affect housing prices in New Braunfels ROA.1226–27 (Looney Dep. 180:23–25, 181:1) or cause more disturbances than other residential uses in New Braunfels. ROA.493–98.

The evidence on this last point was striking. As it turns out, the City has an online portal that actively encourages citizens to complain about short-term rentals. *Short-Term Rental Complaint for City of New Braunfels, TX*, https://tinyurl.com/2p9rjxpr. And for more than a decade, it has been bound by an ordinance that allows, and in some cases requires, the City to initiate proceedings to remove a short-term rental permit for multiple complaints. New Braunfels Code of Ord. §144-5.17-7; §144-5.17-8. But in ten years, the City admits that it has never initiated a single proceeding. ROA.1203 (Looney Dep. 85:20–22). When

21

asked why, a city official effectively conceded that short-term rentals are good neighbors.  ROA.1204 (Looney Dep. at 89:16–25; 90:1–2).

At the same time, the City could not produce a single citation against a short-term rental for a nuisance violation in a decade. ROA.1584, 1586, 1595.  At the eleventh hour (the night before summary judgments) the City produced twenty-three alleged complaints against short-term rentals city wide over a five-year period.  ROA.2058.

### *The Parties' Arguments on Summary Judgment*

At the close of discovery, both sides moved for summary judgment. The arguments largely tracked those presented in this Court two years ago.  With regard to the federal Due Process and Equal Protection claims, the Property Owners insisted that even under rational basis scrutiny, evidence mattered, and now pointed to that evidence.  ROA.1060–70.

They argued further that even if the Ordinance could survive federal rational basis scrutiny, it failed under the heightened rational basis scrutiny required under the Texas Constitution, because any government interest served was minimal in comparison to the eradication of a core property right.  ROA.1055–60.

Finally, the property owners insisted that even if the ordinance was rational on its face, it was certainly irrational as applied to the Property Owners homes, given their locations.  ROA.1060, 1070.

The City argued that evidence is wholly irrelevant, because short-term rentals negatively affect residential character, by definition.

22

ROA.858. Additionally, the City pointed to neighborhood objections, and various articles, blogs, and advocacy pieces speculating about issues that *could* arise from short-term rentals. ROA.862–67. The City also pointed to several studies, discussed below, regarding marginal changes to housing prices in other cities. ROA.864–65.

As for the Texas Claims, the City argued that Texas's heightened rational basis review only applies to "right to earn a living" claims, and does not apply at all when the ordinance was already in effect before the property owner purchased the property. ROA.868–71.

Finally, for the as-applied claims, the City argued that the ordinance could not be unduly burdensome to the property owners, because they allegedly have plenty of money and could purchase homes elsewhere. ROA.870–71.

### *The District Court Grants Summary Judgment in Favor of the City Based on the "Same Logic" Rejected in Marfil I*

Approximately nine months after the close of briefing, the court set the cross-motions for a Zoom hearing. ROA.2147.

A month later, the court issued a four-and-a-half-page order granting the City's summary judgment motion. ROA.2148–2152. The court concluded that the "issue ha[d] not changed" from the initial motion to dismiss, and therefore, that summary judgment was appropriate based on the "same logic which lead [sic] the magistrate judge in this case to recommended GRANTING the 12.b.6 Motion." ROA.2148.

23

Consistent with that previous (now vacated) opinion, the court's new opinion did not consider evidence. Instead, the court once again held that: (1) banning short term rentals is rationally related to preserving residential character as a matter of law, and (2) that local opposition from part of the community alone was sufficient to prohibit a property use, regardless of the evidence. Compare ROA.2151 with ROA.299

With regard to the Property Owner's Texas claims, the court did not address the narrower scope of the police power over private property under Texas law, or the evidence in the record. Instead, the court held (citing nothing) that even baseline rational basis scrutiny does not apply to "limitations that were in place when [the Property Owners] chose to purchase the additional properties." ROA.2152.

The court did not separately analyze the Property Owners' as-applied claims or the Property Owners' equal protection claims—effectively granting summary judgment to the City on those claims without explanation. The Property Owners now return to this Court for relief.

## SUMMARY OF THE ARGUMENT

This case presents a straightforward question: Is it ever possible, on any set of facts, for any short-term rental ban to ever fail rational basis scrutiny? Or, as both the City and the district court have suggested from the beginning of this case, are short-term rental bans simply *per se* rational, regardless of the facts on the ground? Put another way, did this

Court mean what it said when it reversed the district court in *Marfil I* and declared that facts mattered?

When the City banned short term rentals, it restricted liberty and property rights that have been protected by the United States and Texas Constitutions for more than a century. Under this Court's precedents, that restriction cannot be based on majority preference alone. It must be rationally related to some interest within the police power. And as the Supreme Court has declared since the ink was barely dry on the Fourteenth Amendment, that connection to the police power may be rebutted by evidence. Were it otherwise, the zoning authority would be unlimited.

Here, as explained below, the evidence flatly rebuts the government's claimed basis for its ordinance. Nevertheless, the district court denied the Property Owners' motion for summary judgment and granted summary judgment for the City. That judgment should be reversed.

*First*, the district court held that short-term rentals are incompatible with residential character by definition. But this Court rightly rejected this *per se* approach in *Marfil I.* It should not be relitigated here.

Moreover, the district court is simply wrong. Under Texas law, short-term rentals are a residential use. And the record makes clear that they do not cause the sort of externalities that would render them any

25

more incompatible with residential use than other long-term dwellings. A city may not, without more, prohibit a residential use from residential areas as if it were a factory or gas station.  Evidence matters.

That is particularly true here.  The Supreme Court has held that the rationality of a zoning ordinance necessarily turns on the nature of the locality.  An ordinance that is rational in a densely populated urban area might be an arbitrary restriction on property rights in a suburb. New Braunfels is not a sleepy hamlet that has never had short-term rentals.  It is a well-known tourist destination.  Most of the homes at issue in this case are across the street one of the largest water parks in the country.  And one of the homes shares a yard with another short-term rental.  Allowing additional short-term rentals in these neighborhoods would not affect residential character.

*Second*, the City argues (but the district court did not hold) that banning short-term rentals is rationally related to maintaining housing affordability.  According to the City, short-term rentals take homes off the market for purchase, by definition, and therefore lead to increased property values in the area.

But this marks an about face from the City's earlier position. Originally, the City claimed that short-term rentals drive down property values.  Even under rational basis scrutiny, this "heads government wins, tails the property owner loses" approach should be viewed with suspicion.

Regardless, multiple courts have rejected tying short-term rentals to housing prices—with good reason. For one, the evidence in the record has repeatedly shown that short-term rentals have no meaningful effect on housing prices one way or the other. The same is true here.

More importantly, the City's "housing affordability" argument would greatly expand the zoning authority. The municipal zoning power is designed to prevent uses that harm one's neighbors. This Court has never recognized an authority to restrict private property uses that incidentally *increase* neighboring property values. Were it otherwise, the City could ban all second homes and all long-term rentals, as both take homes off the market and therefore reduce supply. The zoning power is not that broad.

*Third*, the district court largely disregarded the Property Owners' Texas law claims. Citing nothing, the district court held that Texas rational basis scrutiny does not apply because the Property Owners were not already renting before the Ordinance went into effect. But this confuses the heightened scrutiny Texas applies to retroactive provisions under Article 1, Section 16, with the baseline scrutiny that Texas courts apply to all ordinances under Article 1, Section 19. Nothing in state or federal law precludes a property owner from challenging the rationality of pre-existing ordinances that burden their property.

*Fourth*, the district court wrongly ruled against the Property Owners' Equal Protection claims without even addressing them. As

27

noted below, the City not only distinguishes between short-term rentals and long-term rentals, it also treats some short-term rentals worse than others. There is no basis for this arbitrary distinction.

*Finally*, the district court erred by ruling against the Property Owners' as-applied claims without even discussing them. Even if the City's ordinance were rational on its face—and it is not—it is wholly arbitrary as-applied to homes adjacent to strip centers, other short-term rentals, a freeway, or one of the largest waterparks in the country. Indeed, one of the property owners in this case shares a yard with a licensed short-term rental. The City's distinctions are arbitrary.

The district court's judgment should be reversed, and the Property Owners should finally be able to use their properties as intended.

## STANDARD OF REVIEW

An order granting summary judgment is reviewed *de novo*. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 365 (5th Cir. 2007).

## ARGUMENT

## I. THE ORDINANCE ARBITRARILY RESTRICTS LIBERTY AND PROPERTY RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT

To prevail on a Fourteenth Amendment claim, a plaintiff must establish: (1) that the challenged law restricts a liberty or property interest that is protected by the Fourteenth Amendment; and (2) that the restriction on that interest is not rationally related to a legitimate

government interest. *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). The Property Owners have met this burden.

**A.  The right to rent one's home to others is a liberty and property interest entitled to protection under the Fourteenth Amendment**

First, there is no dispute that the City's short-term rental ban implicates liberty and property interests subject to protection by the Fourteenth Amendment. Indeed, while the district court held that the City's infringement on the Property Owners' rights was reasonable, it did not dispute that banning short-term rentals implicates liberty and property rights protected by the Fourteenth Amendment.

This makes sense. In Texas, the right to own property includes the right to use it. *Spann v. Dallas*, 111 Tex. 350, 235 S.W. 513, 515 (1921). As the Texas Supreme Court put it, "[p]roperty in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal." *Id.* at 514. This view of property predates Texas to the time of William Blackstone. As Blackstone put it, "[t]he third absolute right, inherent in every Englishman, is that of property: which consists in the free use, enjoyment, and disposal of all his acquisitions . . . ." William Blackstone, *Commentaries on the Laws of England*, 1:134 (1765). *See also Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419, 435 (1982) (The right to own property includes the rights "to possess, use and dispose of it.").

Implicit in the right to use one's property is the right to lease that property to others. *Zaatari*, 615 S.W.3d at 190–91 (citing *Calcasieu Lumber Co. v. Harris*, 77 Tex. 18, 13 S.W. 453, 454 (Tex. 1890)). Indeed, the recognition that the right to lease is inherent in property ownership predates the ratification of the Fourteenth Amendment. Writing in 1856, New York's high court famously noted that "a law which should make it a crime for men either to live in, or rent, or sell their houses" would deprive an individual of property without due process of law, in violation of that state constitution's Due Process clause. *Wynehamer v. People*, 13 N.Y. 378, 420 (1856). The Civil Rights Act of 1866—widely considered the precursor to the Fourteenth Amendment—similarly listed the right to lease as one of several rights subject to federal protection. Civil Rights Act, April 9, 1866, ch 31, § 1, 14 Stat. 27. As such, the Supreme Court has recognized the right to lease as an inherent liberty and property right protected by the Fourteenth Amendment for more than a century. *Terrace v. Thompson*, 263 U.S. 197, 215 (1923).

Texas courts have repeatedly held that this "right to lease" includes the right to lease one's home on a short-term basis. *Zaatari*, 615 S.W.3d at 190-91; *City of Grapevine v. Muns*, 651 S.W.3d 317, 346–47 (Tex. App.—Fort Worth, 2022); *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 578 (Tex. App.—Houston, 2015). And the Texas Attorney General has confirmed this view. Tex. Att'y Gen. Op. No. KP-0308 (2020) at *2, https://tinyurl.com/yzw55jmb.

Indeed, the very first Texas Supreme Court case to consider the meaning of the Texas Constitution's Due Course of Law guarantee struck down a restriction on the renting of rooms as "in contravention of common right." *Milliken v. Weatherford* 54 Tex. 388, 394 (Tex. 1881). And, as explained above, short-term rentals have been part of Texas residential communities for generations.

This is sufficient to establish the first element of a Fourteenth Amendment claim. *Bryan v. City of Madison*, 213 F.3d 267, 275 (5th Cir. 2000) (for Fourteenth Amendment purposes a property right may be established by existing understandings or by state law.).

**B.    The uncontested facts in the record show that the City's ban on renting is not rationally related to a legitimate government interest.**

The Property owners have likewise shown that the Ordinance is not rationally related to a legitimate government interest. *Mikeska*, 451 F.3d at 379.

While rational basis scrutiny is deferential, it is not "toothless." *Harris County v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 323 (5th Cir. 1999). Rational basis review is fact intensive. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 945 F.3d 206, 225 (5th Cir. 2019). The review "places no affirmative evidentiary burden on the government, [but] plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *St. Joseph Abbey v.*

31

*Castille*, 712 F.3d 215, 223 (5th Cir. 2013).  The government action "must rationally relate to the state interests it articulates."  *Id.*  And the Court must examine the government's claimed "rationale informed by the setting and history of the challenged rule."  *Id.*

In the zoning context, local facts are particularly important.  A restriction that may be rationally related to a legitimate government interest in densely populated areas, for example, may be wholly arbitrary for farmland.  *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 937 (5th Cir. 1988).  A challenge to a local zoning ordinance therefore may not be decided in the abstract, but must take some considerations of the local facts on the ground.  *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926).

Here, the district court provided a single basis for upholding the challenged ordinance—residential character.  The City provides one more—housing affordability.  But, as explained below, neither can be supported by the record.

### 1.    *The Ordinance is not rationally related to preserving residential character.*

The City argued below (and the District Court held) that banning short-term rentals is rationally related to preserving residential character, because short-term rentals are allegedly inconsistent with residential character, by definition.    Indeed, the district court's

explanation of this holding amounted to little more than a single sentence. ROA.2150.

But this evidence-free approach to this case was raised, fully briefed, and argued in *Marfil I*. See, e.g., Appellee's Brief, *Marfil*, 70 F.4th 893, Dkt. No. 51, at 18, 23. If the City's approach were correct, then this Court would have been required to dismiss the case as a matter of law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). It did not do so. The City may not relitigate this issue here. *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001) (Issues that were "fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.").

More importantly, the City's *per se* approach to residential character is contrary to law. Generally speaking, a property use can be inconsistent with residential character in one of two ways—both of which turn on reality.

*First*, the use itself can be inherently tied to the types of activities and externalities that are inconsistent with residential life. *Euclid*, 272 U.S. at 387. High traffic commercial uses, vice uses, and heavy industry fall into this category. *Id*.

*Second*, uses that may be innocuous in some circumstances might nevertheless be restricted in the name of residential character in others. *Id*. at 387–88. For example, a minimum parking requirement that would

be arbitrary at King Ranch, might have a clear connection to preserving the safety and character of residential streets in densely packed urban areas.  See *Mahone*, 836 F.2d at 937.

In either case, the facts matter.  *Marfil,* 70 F.4th at 893; *Mikeska*, 451 F.3d at 380.  Here, the record clearly shows that short-term rentals are neither inherently disruptive to residential character, nor disruptive to New Braunfels in particular.  Therefore, the district court's judgment should be reversed, and summary judgment should be granted to the property owners.

### a.     *Short-term rentals are a residential use.*

It should go without saying, but a short-term rental is not a convenience store, a junkyard, or a factory.  Under Texas law, a short-term rental is "residential in nature." *Zaatari*, 615 S.W.3d at 190 (citing *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 291 (Tex. 2018)).

This categorization makes sense.  Zoning laws are generally concerned with what is being done on a property, not for how long. *United Prop. Owners Asso. v. Belmar*, 185 N.J. Super. 163, 447 A.2d 933, 936 (Super Ct. App. Div. 1982) ("Zoning laws are designed to control types of uses in particular zones and are not ordinarily concerned with periods of occupancy or the property interest of the occupants.").  As it turns out, short-term renters are not serving lines of customers, compacting trash, or smelting iron.  They use the home the same way as other renters do:

they "relax, eat, sleep, bathe, and engage in other incidental activities." *Tarr*, 556 S.W.3d at 291, n. 14. By the City's own admission this is a "residential use." ROA.1196 (Looney Dep. 58:5–12).

Nor do short-term rentals cause the sorts of nuisances or externalities that ordinarily would be considered incompatible with residential character. Generally speaking, a use is inconsistent with residential character when it carries with it the sorts of externalities that to a "greater or less degree attach to the location of stores, shops and factories." *Euclid*, 272 U.S. at 391. But as noted in the statement of facts, *supra*, multiple Texas cases, every study in the record, and all of the facts on the ground in New Braunfels show that short-term rentals *do not* cause more of these sorts of issues than their residential counterparts. *Supra* p. 8–12.

To the contrary, it appears that short-term rentals cause *fewer* disturbances. *Zaatari*, 615 S.W.3d at 189–90. Indeed, over a ten-year period, the City could not produce *a single citation* for a nuisance at a short-term rental. ROA.1584, 1586, 1595. At the eleventh hour, the most the City could come up with was twenty-three alleged complaints against alleged short-term rentals, citywide, over a five year period. ROA.2058. Four complaints regarding parking, seven complaints for trash, and twelve for noise. ROA.2058. That amounts to approximately 0.006 alleged complaints per short-term rental, per year. ROA.1188.

Nor has the City ever taken action to revoke a short-term rental permit on the account of disturbances, even though an ordinance has been on the books for a decade that allows, and in some cases requires, that the City initiate proceedings to revoke a permit if there are multiple disturbances. ROA.1203 (Looney Dep. 85:20–22).

The City repeatedly claims that this evidence does not matter. As the City's designated witness put it, even if "every study in the country" showed that short-term rentals do not have these sorts of effects, it would not make the City's contrary judgment irrational. ROA.1201 (Looney Dep. 79:20–24). Or as the City put it in its prior briefing to this Court, the City's conclusion would still be rational even if short-term leasing "involve[d] equal or even fewer nuisance-type issues." Appellee's Brief, *Marfil*, 70 F.4th 893, Dkt. No. 51, at 36–37. According to the City, it is enough that the City *believes* that short-term rentals *could* cause issues.

But even under rational basis scrutiny, a City may not declare a residential use of property to be a nuisance when it is plainly not so in fact. *Yates v. Milwaukee,* 77 U.S. (10 Wall.) 497, 505 (1870). Were it otherwise, cities could immunize all of their zoning ordinances from challenge by mere labels. *Id.*; see also *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1200–01 (9th Cir. 1998).

In *Yates,* for example, the Supreme Court prevented the enforcement of an ordinance that prohibited property owners in certain areas from constructing docks on their property. 77 U.S. at 505. The

City argued that its ordinance declared that docks built in certain areas were a nuisance and that this legislative determination and line-drawing should be dispositive. *Id.* The Court rejected this approach, explaining that while cities had the power to restrict nuisance activities under the police power, "the mere declaration by the city council of Milwaukee that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance unless it in fact had that character." *Id.* To hold otherwise, the Court explained, "would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities." *Id. See also F.P. Dev., LLC v. Charter Twp. of Canton*, 456 F. Supp. 3d 879, 891 (E.D. Mich. 2020) ("a municipality may not immunize its local zoning ordinance from constitutional challenge by declaring that any violation of the zoning code is a nuisance.").

So too here. Rational basis scrutiny does not allow a City to insist that short-term rentals cause nuisance issues incompatible with residential character, when all the record evidence rebuts this claim. In short, the City may not treat short-term rentals like factories or garbage dumps unless they in fact have that character.

Short-term rentals therefore do not fall into the category of uses that are *per se* damaging to residential character, and the district court erred in treating them as such.

**b.** ***The facts on the ground show that short-term renting is both prevalent and compatible with New Braunfels neighborhoods.***

The facts in the record also undermine any claim that short-term rentals are incompatible with the character of New Braunfels communities in particular.

Under Supreme Court precedent, an appeal to residential character may not be made in the abstract. *Euclid*, 272 U.S. at 388; *Mahone*, 836 F.2d at 937. Rather, it must turn on the facts of the particular locality. *Id.*

In *Nectow v. Cambridge*, 277 U.S. 183, 186 (1928), for example, a property owner challenged the rationality of city's refusal to allow commercial development on his lot. *Id.* The city insisted that this restriction was rationally related to the preservation of residential character. *Id.* at 187. But the Court did not simply accept that conclusion in the abstract. It looked at the record. While the lot was zoned residential and abutted on two sides by residential dwellings, it was also directly adjacent to the Ford Motor Company auto assembling factory, and the tracks of the Boston & Albany Railroad were nearby. *Id.* The Court concluded that the city's appeal to residential character in such a context was irrational. *Id.* at 187–88.

Here, the Property Owners do not seek to use their properties commercially. They merely seek to engage in residential use. Nevertheless, the facts look a great deal like *Nectow*.

38

New Braunfels did not adopt modern zoning until the late twentieth century. Prior to 1987, its zoning categories were cumulative—*i.e.*, more intense zoning categories included less intense categories. ROA.1184 (Looney Dep. 10:25–11:4). For example, the zoning code presumptively allowed residential units to be built in commercial areas. ROA.1184. As a result, it is not unusual for New Braunfels homes to be close to commercial uses and tourist destinations. ROA.1185.

The Property Owners' houses reflect this reality. Most of the houses in this case are directly across the street from Schlitterbahn and are surrounded by commercial uses and other short-term rentals. ROA.1235–36 (Looney Dep. 216:21–219:25); ROA.1562. Indeed, the City itself admits that an additional short-term rental in the area would not "substantially affect the public health, safety, morals, or general welfare." ROA.1234 (Looney Dep. 210:23–211:8); ROA.1482; ROA.1238 (Looney Dep. 225:10–15); ROA.1527.

As Judge Jones rightly noted at oral argument in *Marfil I*, any claim that there is a "rational basis for preserving the character, the single-family character…" of the Property Owners' neighborhoods seems irrational "as a million visitors go into Schlitterbahn every year." Oral Argument at 16:36, *Marfil*, 70 F.4th 893, http://tinyurl.com/mrx5tb7f; See also *id* at 20:58 (noting with regard to "residential character" that "if these guys are across the street from you know some kind of retail or cafe or something, or if they're 50 feet from Schlitterbahn, or they are next

39

door to a short-term rental, what makes your idea rational?").  Thus, as in *Nectow*, the City's bare appeal to "residential character" is irrational.

>     c.  ***The district court's single sentence explanation for why it believes short-term rentals undermine residential character is unpersuasive.***

The district court's opinion, tellingly, does not address these arguments.  Instead, the district court's explanation for its holding is limited to a single sentence citing three cases: "[t]he preservation of this residential character is supported by both numerous statements from affected residents in New Braunfels and in Fifth Circuit precedence [sic] which support protection of residential integrity."  ROA.2151 (citing *Hignell Stark*, 46 F.4th at 328–29; *Yur-Mar, L.L.C. v. Jefferson Parish Council*, 451 Fed. Appx. 397, 401 (5th Cir. 2011); *Jackson Court Condominiums, Inc. v. New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989)).

But this Court rejected this *exact* argument, citing the same neighborhood objections, and the same cases in *Marfil I*.  Appellee's Brief, *Marfil*, 70 F.4th 893, Dkt. No. 51, at 28–30; Appellee's Supp. Letter Br., *Marfil*, 70 F.4th 893, Dkt. No. 82, at 1–3.  That's because it is black-letter law that mere "objections [by] some fraction of the body politic" are not a sufficient basis to prohibit a use of private property.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985).  And nothing in *Hignell-Stark*, *Jackson*, or *Yur-Mar* support a broad *per se* approach to short-term rental bans.

In *Hignell-Stark*, this Court struck down a New Orleans ban on non-owner-occupied short-term rentals as unconstitutionally discriminatory under the dormant commerce clause.  46 F.4th at 329. While this Court acknowledged that preserving residential character is a legitimate governmental interest—an issue that is not in dispute here— it made no holding as to whether any particular short-term rental restriction would be rationally related to that interest.  Indeed, it struck down the ordinance in that case as unconstitutional.  *Id.*

In *Jackson*, this Court held that a temporary New Orleans moratorium on certain time share arrangements was rationally related to nuisance abatement because the undisputed facts in the record (including a city study) showed that "the implementation of time-share arrangements in residential neighborhoods would increase the noise, littering, and vandalism."  874 F.2d at 1078; see also *Jackson Court Condos., Inc. v. New Orleans*, 665 F. Supp. 1235, 1238 (E.D. La. 1987) (plaintiffs stipulated to evidence at the district court that time-shares were associated with a higher incidence of "loudness, carelessness, littering and vandalism.").  The Court did not hold, as the City has suggested, that all leasing restrictions are *per se* constitutional.

Finally, *Yur-Mar, L.L.C. v. Jefferson Par. Council*, 451 F. Appx. 397, 399 (5th Cir. 2011) involved a challenge to a midnight closing time and other safety requirements for bars operating in mixed-use residential areas.  An unpublished opinion upholding reasonable safety regulations

41

of bars in residential areas does not render an absolute ban on renting one's home to other families *per se* constitutional.

Of course, none of this is to say that short-term rentals may never be regulated in residential areas. They may be subject to any manner of nuisance restrictions like any other property use. Nor does it mean they could never, upon a proper record, be restricted further. But if the government insists that a longstanding, prevalent, residential use of property is suddenly inconsistent with residential character and subject to prohibition, the Constitution demands more than a "because the government said so."

Here, the record flatly rebuts the City's claims. Under such circumstances, summary judgment for the City was improper and should be reversed, and summary judgment should be granted for the Property Owners.

> **2.** **The City's late-breaking housing affordability argument is inconsistent with law, unsupported by the record, and would greatly expand the zoning authority beyond existing precedent.**

Next, the City argued below (but the District Court did not hold) that banning short-term rentals is rationally related to housing affordability. The City's theory is that: (1) any house being used as a short-term rental is, by definition, not available for purchase as long-term housing, (2) this reduced housing supply, by definition, can marginally increase local property values; and therefore (3) banning

42

short-term rentals in residential areas is rationally related to the government's interest in preventing increased property values—*i.e.* maintaining housing affordability. This argument has several problems.

*First*, it marks a complete about-face from the City's initial justification for the Ordinance. When this case was filed in 2020, the City argued that the Ordinance was designed to *preserve* existing property values. ROA.62. The City's theory at the time was that short-term renters would "reduce neighborhood property values" in the City. ROA.174.

On remand, the data simply did not bear this out. To the contrary, courts have generally found that short-term rentals do not affect property values one way or the other. See, e.g., *Zaatari*, 615 S.W.3d at189; ROA.1095 (*Dallas Short-Term Rental Alliance*, No. DC-23-16845, at *5). To the extent property values are affected at all, the evidence shows that values in the area could marginally increase, because property owners "made investments in property improvements to make them more attractive options for potential renters." ROA.1083 (Dallas Study)

Faced with this evidence, the City flipped positions on remand to argue that the Ordinance is now rationally related to keeping property values down. ROA.1590.

Even under rational basis scrutiny, this sort of change on remand warrants skepticism. See *Mikeska*, 451 F.3d at 381. After all, a law cannot be *both* rationally related to keeping property values up *and*

rationally related to keeping property values down at the same time. Otherwise, the City's rational basis would be logically unfalsifiable. A test that is "heads government wins, tails the property owner loses," is no test at all.

*Second*, the City's affordability theory would mark a novel expansion of zoning authority. While this Court has upheld city authority to prevent harmful uses of property that *reduce* surrounding property values, *Texas Manufactured Hous. Ass'n v. City of Nederland* 101 F.3d 1095, 1106 (5th Cir. 1996), it has not (to Appellants' knowledge) recognized any authority to prohibit otherwise harmless uses of property that *increase* the value of neighboring properties.

This makes sense. The zoning authority—like the police power from which it springs—has traditionally been based in preventing harmful uses of property, not helpful ones. *Euclid*, 272 U.S. at 387-88. This theory is codified in the Texas Zoning Enabling Act (ZEA), which limits the purpose of zoning in Texas to seven distinct categories—all of which are based broadly in preventing harm. Tex. Local Gov't Code § 211.004.

By contrast, under the City's view, it could prohibit any number of harmless traditional uses of property, simply because they might marginally increase surrounding property values. For example, under the City's approach, it could ban the ownership of all second homes, and all long-term rentals, because both of those uses necessarily take homes

44

off of the market for long-term ownership, thus reducing the available housing supply and marginally driving up costs. The City could likewise ban mowing one's lawn, painting one's home, or installing better countertops—all of which have been shown to increase local property values in the aggregate. David McMilin, *8 Ways to Increase Your Home's Value*, Bankrate (Feb. 6, 2024), https://tinyurl.com/5hyuxsff. The City cited no authority below for this radical expansion of the zoning power.

To be sure, the City may take action to address housing affordability concerns. Among other things, it could eliminate price controls, reduce housing regulations, and provide additional incentives for homebuilders to construct more housing. John Bonura, *Housing Affordability: Overview and Model Legislation*, Texas Public Policy Foundation (Mar. 2024), https://tinyurl.com/bdh4m2ds. But restricting an otherwise harmless use of property solely for the economic benefit of others is not within the police power. See *St. Joseph Abbey*, 712 F.3d at 226–27 (pure economic favoritism is not a legitimate interest).

*Finally*, even if the City's view of affordability was a legitimate government interest, the record does not show that banning short-term rentals is rationally related to that interest. As noted above, every Texas court to look at the issue has held that short-term rentals do not meaningfully affect housing prices one way or the other. *Zaatari*, 615 S.W.3d at189 (noting that there was "nothing in the record" to support the City's contention that short-term rentals "affect housing

45

affordability."); ROA.1095 (*Dallas Short-Term Rental Alliance*, No. DC-23-16845, at *5) (holding that "STR Ordinances are not rationally related to increasing affordability of housing in Dallas.").

The record here is no different.  The City admits that it has no data showing that short-term rentals have any effect on housing affordability in New Braunfels.  ROA.1226–27 (Looney Dep. 180:23-25, 181:1).  The studies it tries to cobble together from around the world fair no better.

1. The Baron Study: held that a significant increase in short-term rentals could result in between a "0.018% increase in rents and a 0.026% increase in house prices" but concluded that these effects were "ambiguous."  Kyle Baron, et. al.  *The Effect of Home-Sharing on House Prices and Rents: Evidence from Airbnb*, SSRN (March 4, 2020).

2. The Horn Study: predicted a potential 0.4% increase in housing costs due to increased short-term rentals in Boston.  Karen Horn & Mark Merante, *Is Home Sharing Driving Up Rents? Evidence from Airbnb in Boston*, 38 J. Housing Econ. 14, 15 (2017).

3. The Wegmann Study: found *no increase* in housing costs associated with short-term rentals in Austin, Boston, Chicago, and Washington D.C., but concluded that an increase in housing prices from increased short-term rentals was plausible in San Francisco, one of the tightest housing

46

markets in the country. Jake Wegmann & Junfeng Jiao, *Taming Airbnb: Toward Guiding Principles for Local Regulation of Urban Vacation Rentals Based on Empirical Results from Five US Cities*, 69 Land Use Policy, 494 (Dec. 2017).

These sorts of marginal connections are not sufficient to prohibit a traditional private property right, even under rational basis scrutiny. See *City of Cleburne*, 473 U.S. at 446; See also *Am. Univ. v. Prentiss*, 113 F. Supp. 389, 395–96 (D.D.C. 953) (adopted by reference and affirmed *Prentiss v. Am. Univ.*, 214 F.2d 282, 283 (D.C. Cir. 1954) (rejecting similarly tenuous evidence in support of a land-use regulation).

As such, the City provided no rational basis for its ordinance. The district court's grant of summary judgment to the City should therefore be reversed, and the Property Owners' motion for summary judgment should be granted.

## II. EVEN IF THE ORDINANCE COULD SURVIVE UNDER THE FOURTEENTH AMENDMENT, IT FAILS THE HEIGHTENED RATIONAL BASIS TEST REQUIRED BY ARTICLE 1, SECTION 19 OF THE TEXAS CONSTITUTION

Like the Federal Due Process clause, Texas's Due Course of Law clause requires that restrictions on private property rights be rationally related to a legitimate government interest. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). But Texas courts'

47

interpretation of the "Due Course" clause varies from federal rational-basis scrutiny in two important ways.

*First*, Texas courts take an older, narrower view of what constitutes a legitimate government interest to regulate property. In Texas, the police power over private property is largely limited to policing harmful or incompatible uses. *Milton v. United States*, 36 F.4th 1154, 1161 (Fed. Cir. 2022) (citing *Lombardo v. Dallas*, 73 S.W.2d 475, 478 (Tex. 1934)). As the Texas Supreme Court has explained, "the police power is subordinate to the right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody." *Lombardo*, 73 S.W.2d at 479; see also, *Spann*, 235 S.W. at 515. As such, "the police power may be invoked to abridge the right of the citizen to use his private property when such use will endanger public health, safety, comfort or welfare—*and only* when this situation arises." *Id.* (emphasis added). An otherwise harmless use of property may not be prohibited solely to "satisfy a sentiment against the mere presence" of that use "in a residence part of the City." *Money v. City of San Marcos*, No. 24-50187, 2025 U.S. App. LEXIS 2897, at *13 (5th Cir. Feb. 7, 2025) (quoting *Spann*, 235 S.W. at 516).

Applying this harm-based approach to the police power, for example, the Texas Supreme Court has long held that "[r]egulations interfering with private property rights are invalid if founded upon purely aesthetic consideration" despite the fact that federal law has

48

allowed some aesthetic regulation since the late 1950s. *Lombardo*, 73 S.W.2d at 479; see also, *Spann*, 235 S.W. at 517 (collecting cases).

*Second*, unlike federal rational basis scrutiny, the Texas rational basis test requires at least some consideration of proportionality as well as rationality. *Patel*, 469 S.W.3d at 87. If the "loss to the property owner affected, in proportion to the good accomplished [by the ordinance]" is unreasonable, then the ordinance must fail. *W. U. Place v. Ellis*, 134 S.W.2d 1038, 1041 (Tex. 1940).

Importantly, both steps of this analysis must be conducted based on the facts in the record and "all of the surrounding circumstances." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932–33 (Tex. 1998); *Patel*, 469 S.W.3d at 87 (The court must "consider the entire record, including evidence offered by the parties."); *City of Dallas. v. Stewart*, 361 S.W.3d 562, 575-76 (Tex. 2012) (Any "determination regarding the police power, is a question of law and not fact that must be answered based upon a fact-sensitive test of reasonableness.") (citations and emphasis omitted).

As applied to the Property Owners here, the challenged ordinance plainly fails this test. As noted *supra*, short-term renting is not a nuisance at common law. And the record definitively shows that the practice is not harmful. This is certainly true as applied to the neighborhoods at issue in this case, which the City admits are "not sleepy" little communes. ROA.1233 (Looney Dep. 206:5–8). The

49

Ordinance therefore does not serve a legitimate interest at all under the Texas Constitution.

But even if there were *some* impact to a legitimate government interest by additional short-term rentals in the area, the City's decision to eradicate—not merely to regulate—the Property Owners short-term leasing rights is grossly disproportional to that interest, and therefore unduly burdensome given the government interest at stake. *W. U. Place*, 134 S.W.2d at 1040–41.

The district court's opinion does not really address any of this. Rather, the court suggests two ways that even rational basis scrutiny would not apply here—both of which conflict with Texas law.

*First*, the court suggested (but did not hold) that the undue burden test articulated in *Patel* was limited to "right to earn a living" claims and therefore would not apply here. ROA.2151. But the undue burden test was applied in property rights cases more than a century before the Texas Supreme Court expanded that test to cover right to earn a living claims in *Patel*. See, e.g., *Hous. & T. C. R. Co. v. Dallas*, 84 S.W. 648, 655 (Tex. 1905) (applying burden and proportionality test to property-rights based challenge to a local ordinance restricting railroad crossings); *W. U. Place v. Ellis*, 134 S.W.2d 1038, 1040, 1041 (Tex. 1940) (same). Indeed, the very first case cited by *Patel* when discussing the undue burden test was a property rights based challenge to a zoning ordinance. *Patel*, 469 S.W.3d at 87. And the oldest case cited for the undue burden test in *Patel* was a

50

property rights case from 1881, striking down a restriction on renting rooms—the very right at issue in this case. *Id.* 83 (citing *Milliken*, 54 Tex. 388).

*Second*, the district court held—citing nothing—that the undue burden test could not apply to "limitations that were in place when [the Property Owners] chose to purchase the additional properties." ROA.2152. But in doing so, the court confuses baseline rational basis scrutiny—which applies to all regulations—and the heightened review for retroactive ordinances required under Article 1, Section 16 of the Texas Constitution.

Under the Texas retroactivity clause, an ordinance may not restrict property uses established before that ordinance went into effect unless it meets a heightened three-part test. *Zaatari*, 615 S.W.3d at 188. As such, if the Property Owners brought retroactivity claims—and they did not— it would be highly relevant whether they had started leasing before the ordinance went into effect.

But nothing in state or federal law suggests that a property owner may not challenge the *rationality* of an ordinance affecting baseline property rights simply because it was in effect when they purchased their property. *Palazzolo v. Rhode Island*, 533 U.S. 606, 627 (2001) (post-enactment transfer of title does not foreclose a challenge to the rationality of an ordinance); *Milton v. United States*, 36 F.4th 1154, 1162 (Fed. Cir. 2022) ("There is no blanket rule under Texas law that property

rights are held subject to owners' expectations on acquisition"); *City of Sherman v. Wayne*, 266 S.W.3d 34, 47 (Tex. App.—Dallas 2008, no pet.) (rejecting as a matter of law a city's argument that property rights are not burdened by an ordinance that is already in effect when the property owner purchased the property).

Indeed, this Court applied the Texas Due Course of Law guarantee to a pre-existing ordinance just this year. *Money*, No. 24-50187, 2025 U.S. App. LEXIS 2897, at *12. And perhaps the most famous successful rational basis challenge to a zoning ordinance in the last forty years involved an ordinance that was already on the books when the property was purchased. *City of Cleburne*, 473 U.S. at 436.

A federal district judge exercising supplemental jurisdiction had no authority to unilaterally make Texas law *less* protective of private property rights than its federal counterpart.

## III. THE CITY'S ARBITRARY RESTRICTIONS ON SHORT-TERM RENTALS VIOLATE THE EQUAL PROTECTION CLAUSE.

In addition to the claims discussed above, the Property Owners also raise claims under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution and the Equal Protection clause located in Article 1 Section 3 of the Texas Constitution. However, the district court failed to even address these claims in its opinion. This in and off itself should be sufficient for reversal. Nevertheless, the record

52

here is sufficient for this Court to rule in the Property Owners' favor on their Equal Protection claims.

In contrast to a "due process action, which looks solely to the government's exercise of its power vis-a-vis the plaintiffs, an equal protection claim asks whether a justification exists for the *differential* exercise of that power." *Mikeska v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006) (emphasis in original). To bring an equal protection claim, the property owner must show that the difference in treatment with others similarly situated was irrational. *Id.* Or, as the Texas Supreme Court put it, differential treatment must be "based on a real and substantial difference having relationship to the subject of the particular enactment." *R.R. Com. of Texas v. Miller*, 434 S.W.2d 670, 673 (Tex. 1968).

To meet this standard, the connection between the classification drawn and the government interest claimed must be real. A city "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary." *City of Cleburne*, 473 U.S. at 446.

For example, in *Hunt v. San Antonio*, the city of San Antonio sought to rezone two parcels based on alleged increased traffic in the area. 462 S.W.2d 536, 540 (Tex. 1971). The plaintiffs in that case challenged the rezoning as violating the equal protection clause because there was no evidence of an increase in traffic in that area sufficient to treat those lots

53

differently than adjacent neighborhoods. *Id.* While the court assumed, arguendo, that an increase in traffic could be a legitimate reason to rezone an area, it did not simply defer to the City's claims of traffic increases. *Id.* Instead, the court looked to the actual evidence and concluded that the distinction drawn by the city was not based on a "real and substantial" difference in traffic and the rezoning was unconstitutional. *Id.*

Similarly, in *St. Joseph Abbey*, the state claimed that prohibiting individuals who were not funeral directors (so called "third-party sellers") from selling caskets was rationally related protecting consumers from deceptive trade practices. The court rejected that argument because "there [was] insufficient evidence that . . . third-party sellers of funeral goods [were] engaged in *widespread* unfair or deceptive acts or practices" or "evidence indicating *significant* consumer injury caused by third-party sellers." *St. Joseph Abbey*, 712 F.3d at 225 (emphasis added). Moreover, as the court explained, there were already other laws on the books that addressed deceptive practices directly. *Id.* at 225–26.

The same is true here. The undisputed evidence shows that short-term rentals do not produce meaningfully more disturbances than other residential uses. *See supra* p. 8–12. And, as in *St. Joseph Abbey*, the City already has laws on the books that address nuisance behaviors. *See, e.g.* New Braunfels Code of Ordinances §50-26 (unsafe buildings), 50-27 (unoccupied buildings), 50-57 (prohibiting "filth, carrion, weeds, rubbish,

junk, trash, waste products, brush and refuse, graffiti, impure or unwholesome matter of any kind, objectionable, unsightly or insanitary matter of whatever nature to accumulate or remain" on a person's property), 62-286 (prohibiting carrion, filth, or other impure or unwholesome matter to accumulate"), 82-2 (disorderly conduct on public sidewalks), 82-9 (noise), 114-4 (duty to maintain premises free from weeds, trash, filth, and debris), and 144-5.1 (parking). The City's distinction is therefore arbitrary.

This distinction is even more arbitrary when as applied to the properties in this case. There are currently hundreds of short-term rentals in New Braunfels. ROA.1188 (Looney Dep. 27:21–25); ROA.1260. The properties at issue in this case are surrounded by other short-term rentals and high traffic commercial uses like Schlitterbahn. Any distinction between short-term rentals and the other uses in Property Owners' neighborhoods is wholly arbitrary.

## IV. THE DISTRICT COURT'S FAILURE TO CONSIDER THE PROPERTY OWNERS AS-APPLIED CLAIMS IS REVERSABLE ERROR.

Finally, the district court failed to address the Property Owners' as-applied claims, effectively granting summary judgment on those claims without discussion.

But even if the Ordinance was rational in some instances—and it is not—it is certainly arbitrary as applied to the Property Owners here. Douglas Mathes's home shares a yard with a pre-existing short-term

rental and is mere feet from the entrance to Schlitterbahn. ROA.1239-40 (Looney Dep. 229:13–230:9, 233:8–10). The Marfils' homes are across the street from the parking lot of Schlitterbahn and are walking distance to various commercial uses. ROA. 1235-36 (Looney Dep. 216:21–219:25). There are at least *four* other short-term rentals within a few hundred feet. ROA.1237 (Looney Depo 221:10–19). Daniel Olveda and Korey Rohlack's properties are adjacent to a strip center in an area the City's own staff suggested would be appropriate to rezone for commercial use. ROA.1480; ROA.1234 (Looney Dep. 210:23–211:8).

To insist to these property owners that they cannot use their homes in a judicially recognized residential way because it might impact the "residential character" of those neighborhoods, is the definition of arbitrary.

The fact that the district court thought these claims were so frivolous as to be dismissed *without discussion*, indicates just how wrong its view of rational basis scrutiny is.

The district court's judgment on this issue should be reversed and summary judgment should be granted for the Property Owners.

## CONCLUSION

"If judicial review means *anything*, it is that judicial restraint does not allow *everything*. The rational-basis bar may be low, but it is not subterranean." *Patel*, 469 S.W.3d at 95 (Willett, J. concurring) (emphasis in original).

56

Two years ago, this Court issued a published opinion in this case holding that short-term rental bans are not *per se* constitutional. Instead, property owners may challenge the justification of such bans with evidence. That judgment was in accord with this Court's precedents.

On remand, the evidence showed what was expected. This is not a case about a sleepy community that has never had a short-term rental. It's about a tourist destination filled with mixed use neighborhoods banning *some* short-term rentals and allowing hundreds of others. It's about banning short-term rentals based on nuisances, when all the evidence in the record shows that short-term rentals do not produce more nuisances than their neighbors. It's about a City insisting, based on mere *ipse dixit*, that a judicially recognized residential use is inconsistent with residential character as a matter of law.

Faced with this evidence, the district court issued a four and half page order granting summary judgment to the City as the clear and obvious outcome.

But if *this* case, in *this* city, on *this* record, is not sufficient to render *this* ordinance unconstitutional, then no short-term rental ordinance is unconstitutional. If that is so, then it would have been better for this Court to declare that all short-term rental ordinances are *per se* constitutional in *Marfil I* and dismiss the case. There was no reason to put the Property Owners through the time and cost of discovery. As the

57

Texas Supreme Court has put it, if mere local preference is all that is required to uphold an ordinance restricting a man's property "the law might as well deal candidly with him and assert that he holds his property altogether at public sufferance." *Spann*, 235 S.W. at 516.

Thankfully, that is not the law.  In this Court, evidence matters.  And in this case, all the evidence cuts one way.  The district court's judgment should be reversed, and summary judgment should be granted to the Property Owners.

Respectfully submitted,

*/s/Chance Weldon*
ROBERT HENNEKE
rhenneke@texaspolicy.com
CHANCE WELDON
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
ctownsend@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:(512) 472-2700
Facsimile: (512) 472-2728

J. PATRICK SUTTON
THE LAW OFFICE OF J. PATRICK SUTTON
1505 West 6th Street
Austin, Texas 78703
Telephone:(512) 417-5903

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Chance Weldon*
CHANCE WELDON

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,930 words. This brief also complies with the type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

Date: March 25, 2025,　　　　*/s/ Chance Weldon*
　　　　　　　　　　　　　　　CHANE WELDON