No. 25-50025

_____

# In the
# United States Court of Appeals
# For the Fifth Circuit

_____

RAFAEL MARFIL; VERGE PRODUCTIONS, L.L.C.;
ENRICO MARFIL; NAOMI MARFIL; KOREY A. RHOLACK;
DANIEL OLVEDA; DOUGLAS WAYNE MATHES,

*Plaintiffs – Appellants,*

**v.**

CITY OF NEW BRAUNFELS, TEXAS,

*Defendant – Appellee*

On Appeal from the United States District Court
for the Western District of Texas, Waco Division
No. 6:20-cv-00248-ADA, Alan Albright, Judge Presiding

**BRIEF FOR APPELLEE
CITY OF NEW BRAUNFELS, TEXAS**

Ryan D. V. Greene
TERRILL & WALDROP
810 West 10th Street
Austin, Texas  78701
Telephone:  (512) 474-9100
Facsimile:  (512) 474-9888
rgreene@terrillwaldrop.com

**ATTORNEY FOR APPELLEE
CITY OF NEW BRAUNFELS, TEXAS**

**CERTIFICATE OF INTERESTED PARTIES**

_____

## No. 25-50025

_____

**RAFAEL MARFIL; VERGE PRODUCTIONS, L.L.C.;
ENRICO MARFIL; NAOMI MARFIL; KOREY A. RHOLACK;
DANIEL OLVEDA; DOUGLAS WAYNE MATHES,**

*Plaintiffs – Appellants*

**v.**

**CITY OF NEW BRAUNFELS, TEXAS,**

*Defendant – Appellee*

The undersigned counsel of record certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

The City of New Braunfels, Texas, is the Appellee on this appeal, and was the Defendant below. The City is represented by Ryan D. V. Greene, Terrill & Waldrop, 810 West 10th Street, Austin, Texas 78701.

Rafael Marfil, Verge Productions, LLC, Enrico Marfil, Naomi Marfil, Korey A. Rohlack, Daniel Olveda, and Douglas Wayne Mathes are the Appellants on this appeal, and were the Plaintiffs below. These Plaintiffs are represented by Robert Henneke, Chance Weldon, Christian Townsend, and Clayton Calvin at the Texas Public Policy Foundation, 901 Congress Avenue, Austin, Texas 78701. At one point in the case, the Plaintiffs were also represented at the district court by J. Patrick

i

Sutton, The Law Office of J. Patrick Sutton, 1505 West 6th Street, Austin, Texas 78703.

In addition, every long-term resident of the City of New Braunfels whose family home is located in a single-family or two-family residential zoning district has an interest in the outcome of this lawsuit, by which the Plaintiffs seek to hold unconstitutional the City's attempts to limit properties that can be used for short-term rentals in those longstanding residential neighborhoods.

/s/ Ryan D. V. Greene
Ryan D. V. Greene
Counsel for the
City of New Braunfels, Texas

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not needed here.  A straightforward application of the rational basis test—applied to due process and equal protection challenges—mandates affirmance of the district court's summary judgment against the plaintiffs' claims.

When this case previously came before this Court, one judge on the panel agreed that Plaintiffs' claims had rightly been dismissed for failure to state a claim. *See Marfil v. City of New Braunfels*, 70 F.4th 893, 893 n.1 (5th Cir. 2023).  The other two judges on the panel disagreed, but acknowledged that Plaintiffs faced a "high bar for challenging local zoning ordinances under the Constitution," and that summary judgment against Plaintiffs would be appropriate if discovery did not produce sufficient evidence to "surmount" that high bar.  *See id.* at 893.  Now that discovery has closed, and Plaintiffs have not produced the type of evidence that might support their claims, this Court can readily affirm the summary judgment entered in favor of the City of New Braunfels.

TABLE OF CONTENTS

Certificate of Interested Parties.................................................................................i

Statement Regarding Oral Argument ...................................................... iii

Table of Authorities ...................................................................................v

Statement of Issue ......................................................................................1

Statement of the Case.................................................................................2

Summary of the Argument........................................................................15

Argument...................................................................................................17

I.      The City's STR prohibition does not violate the due process and equal protection clauses of the United States Constitution....................................17

        A. The summary judgment can be affirmed based on the rational basis of preserving the residential character of neighborhoods. .......................23

        B. The summary judgment can be affirmed based on the rational basis of reducing STRs' negative impact on the availability of housing in the community. ...................................................................................32

        C. The summary judgment can be affirmed based on the rational basis of minimizing nuisance-type activities that can occur at STRs. ..............36

II.     The City's STR prohibition does not violate the due course of law and equal protection clauses of the Texas Constitution. .....................................45

        A. The City's STR prohibition satisfies the rational basis test. ....................45

        B. The City's STR prohibition satisfies the *Patel* oppressiveness test.........48

Prayer ........................................................................................................54

Certificate of Service .................................................................................555

Certificate of Compliance ..........................................................................555

iv

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Metro. Gov't of Nashville & Davidson Cty.*,
No. M2017-00190-COA-R3-CV, 2018 Tenn. App. LEXIS 28
(Tenn. Ct. App. Jan. 23, 2018) ..........................................................44

*City of Cleburne v. Cleburne Living Ctr.*,
473 U.S. 432 (1985)............................................................................18

*City of Dallas v. Dallas Short-Term Rental Alliance*,
No. 05-23-01309-CV, 2025 Tex. App. LEXIS 743
(Tex. App.—Dallas Feb. 7, 2025, no pet. h.) ....................................47

*City of Grapevine v. Muns*,
651 S.W.3d 317 (Tex. App.—Fort Worth 2021, pet. denied).......................47

*City of W. Univ. Place v. Ellis*,
134 S.W.2d 1038 (Tex. 1940) .............................................................51

*Draper v. City of Arlington*,
629 S.W.3d 777 (Tex. App.—Fort Worth 2021, pet. denied)................ 46, 47

*Ewing v. City of Carmel-By-The-Sea*,
286 Cal. Rptr. 382 (Ct. App. 1991) ....................................................24

*First Am. Title Ins. Co. v. Combs*,
258 S.W.3d 627 (Tex. 2008) ...............................................................45

*FM Props. Operating Co. v. City of Austin*,
93 F.3d 167 (5th Cir. 1996) ................................................................18

*Garrett v. Tex. St. Bd. of Pharm.*,
No. 03-21-00039-CV, 2023 Tex. App. LEXIS 454
(Tex. App—Austin Jan. 25, 2023, pet. denied)..............................49

*Hegar v. Tex. Small Tobacco Coalition*,
496 S.W.3d 778 (Tex. 2016) ...............................................................49

*Heller v. Doe*,
    509 U.S. 312 (1993)................................................................. passim

*Hignell v. City of New Orleans*,
    No. 19-13773, 2024 U.S. Dist. LEXIS 34030
    (E.D. La. Feb. 28, 2024) ......................................................... 21, 51

*Hignell-Stark v. City of New Orleans*,
    46 F.4th 317 (5th Cir. 2022) .................................................. passim

*Houston & Tex. Cent. Ry. Co. v. City of Dallas*,
    84 S.W. 648 (Tex. 1905) .................................................................49

*Hunt v. City of San Antonio*,
    462 S.W.2d 536 (Tex. 1971) ..........................................................31

*Jackson Court Condo. v. City of New Orleans*,
    665 F. Supp. 1235 (E.D. La. 1987).......................................... 19, 20

*Jackson Court Condo. v. City of New Orleans*,
    874 F.2d 1070 (5th Cir. 1989) .................................... 19, 20, 24, 38

*JBrice Holdings, LLC v. Wilcrest Walk Townhomes Ass'n*,
    644 S.W.3d 179 (Tex. 2022) .........................................................30

*Karol v. City of N.Y.*, 396 F. Supp. 3d 309 (S.D.N.Y. 2019) .......................... 22, 33

*King v. City of Marion*,
    No. 3:19-CV-00207, 2020 U.S. Dist. LEXIS 16805
    (E.D. Ark. Feb. 3, 2020) ................................................................22

*Lombardo v. City of Dallas*,
    73 S.W.2d 475 (Tex. 1934) ...........................................................46

*Mahone v. Addicks Util. Dist.*,
    836 F.2d 921 (5th Cir. 1988) .........................................................22

*Marfil v. City of New Braunfels*,
    70 F.4th 893 (5th Cir. 2023) ................................................... iii, 12

*Martinez v. Town of Clarkstown*,
No. 23-CV-5364, 2024 U.S. Dist. LEXIS 162132
(S.D.N.Y. Sept. 9, 2024)................................................................51

*Mayhew v. Town of Sunnyvale*,
964 S.W.2d 922 (Tex. 1998) ................................................. 46, 47

*MDKC, LLC v. City of Kansas City*,
No. 4:23-CV-395, 2023 U.S. Dist. LEXIS 176808
(W.D. Mo. Oct. 2, 2023)................................................................21

*Milliken v. City Council of Weatherford*,
54 Tex. 388 (1881) .......................................................................49

*Moskovic v. City of New Buffalo*,
638 F. Supp. 3d 770 (W.D. Mich. 2022)......................................22

*Moskovic v. City of New Buffalo*,
No. 23-1165, 2023 U.S. App. LEXIS 33273
(6th Cir. Dec. 14, 2023)...............................................................50

*Murphy v. Walworth County*,
383 F. Supp. 3d 843 (E.D. Wis. 2019) .........................................22

*NCAA v. Yeo*,
171 S.W.3d 863 (Tex. 2005) ........................................................46

*Nekrilov v. City of New Jersey*,
45 F.4th 662 (3d Cir. 2022) ...................................... 21, 36, 44, 52

*Patel v. Tex. Dep't of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) .................................................. 48, 52

*Selvaggi v. Borough of Point Pleasant Beach*,
No. 22-00708, 2022 U.S. Dist. LEXIS 93746
(D.N.J. May 25, 2022)..................................................................22

*Shelton v. City of Coll. Station*,
780 F.2d 475 (5th Cir. 1986)................................................. 18, 44

*Short Term Rental Alliance of San Diego v. City of San Diego*,
No. 22CV1831, 2023 U.S. Dist. LEXIS 102156
(S.D. Cal. June 12, 2023)........................................................22

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*,
207 A.3d 886 (Pa. 2019).........................................................24

*St. Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) .................................................38

*Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co.*,
537 S.W.3d 647 (Tex. App.—Austin 2017, pet. denied) ..............49

*Tex. Dep't of Motor Vehicles v. Fry Auto Servs.*,
584 S.W.3d 138 (Tex. App.—Austin 2018, no pet.)....................54

*Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*,
647 S.W.3d 648 (Tex. 2022) ........................................... 49, 50

*Vance v. Bradley*,
440 U.S. 93 (1979)........................................................ 35, 43

*Vill. of Euclid v. Amber Realty Co.*,
272 U.S. 365 (1926)...............................................................18

*Vill. of Tiki Island v. Ronquille*,
463 S.W.3d 562 (Tex. App.—Houston [1st Dist.] 2015, no pet.).......... 47, 50

*Villanueva v. Vill. of Volente*,
No. 1:23-CV-1246, 2024 U.S. Dist. LEXIS 85735
(W.D. Tex. May 13, 2024) ......................................... 21, 38, 51

*Weisenberg v. Town Bd. of Shelter Island*,
404 F. Supp. 3d 720 (E.D.N.Y. 2019).......................................22

*Yur-Mar, LLC v. Jefferson Parish Council*,
451 Fed. App'x 397 (5th Cir. 2011)..........................................24

*Zaatari v. City of Austin*,
615 S.W.3d 172 (Tex. App.—Austin 2019, pet. denied).......... 33, 42, 44, 48

## Statutes

TEX. LOC. GOV'T CODE
    § 211.003(a)(5) ....................................................................................47
    § 211.004(a)(3) ............................................................................ 32, 47
    § 211.005(b) .........................................................................................47

## Other Authorities

NEW BRAUNFELS, TEX., ORDINANCES ch. 144, §§ 1.1, 3.4, 4.2 ....................................4

Airbnb, Inc., SEC Form S-1 Registration Statement (Nov. 16, 2020) .....................39

Allyson E. Gold, *Community Consequences of Airbnb*,
    94 WASH. L. REV. 1577 (Dec. 2019) ..................................................... 33, 38

Dayne Lee, *How Airbnb Short-Term Rentals Exacerbate Los Angeles's Affordable
    Housing Crisis: Analysis and Policy Recommendations*,
    10 HARV. L. & POL'Y REV. 229 (Winter 2016) .............................................34

Diamond Smith, *Renting Diversity: Airbnb as the Modern Form of Housing
    Discrimination*,
    67 DEPAUL L. REV. 581 (Spring 2018) .........................................................33

Eva Ruth Moravec, *Short-Term Rentals Cause a Long-Term Mess*,
    TEXAS OBSERVER (Sept. 11, 2023) ...............................................................40

https://www.austintexas.gov /sites/default/files/files/ Auditor/Audit_Reports/Short-
    Term_Rentals__May_2012_.pdf ...................................................................42

Laiyang Ke, *et al.*, *Airbnb and neighborhood crime*,
    PLOS ONE 16(7) (July 14, 2021) ..................................................................24

Lori Brown, *Nw. Dallas neighborhood frustrated with short-term rentals*,
    FOX 4 (July 12, 2022) ...................................................................................40

Murray Cox & Kenneth Haar, *Platform Failures: How short-term rental platforms
    like Airbnb fail to cooperate with cities and the need for strong regulations
    to protect housing*, GUE/NGL STUDY (Dec. 9, 2020) ..................................33

Myah Taylor, *Plano has a short-term rental problem*,
    DALLAS MORNING NEWS (Feb. 17, 2023)......................................................37

Nathan P. Bettenhausen, *There Goes the Neighborhood: Regulating the Growing
    Short-Term Rental Industry*,
    57 ORANGE CTY. LAWYER 16 (July 2015)....................................................25

## STATEMENT OF ISSUE

The City of New Braunfels, by zoning ordinance, prohibits short-term rentals in single-family and two-family residential zoning districts.  The plaintiffs purchased houses in those districts where the City had prohibited short-term rentals, and then sued to strike down that prohibition.

1.    Was summary judgment appropriate against the plaintiffs' claims that the due process and equal protection clauses of the United States Constitution prohibit the City from confining short-term leasing to zoning districts other than single-family and two-family residential districts?

2.    Was summary judgment appropriate against the plaintiffs' claims that the due course of law and equal protection clauses of the Texas Constitution prohibit the City from confining short-term leasing to zoning districts other than single-family and two-family residential districts?

The answer to these questions is "Yes."  Cities have broad discretion in enacting zoning restrictions, and the law is clear that such discretion extends to regulating short-term leasing on properties within their municipal limits.  In light of this law, as well as the facts in the summary judgment record, the district court's judgment should be affirmed.

1

## STATEMENT OF THE CASE

The City of New Braunfels (the "City" or "New Braunfels") adopted a zoning rule that prohibits properties from commencing short-term rentals ("STRs") in single-family and two-family residential-zoned districts within the City. By their lawsuit, Plaintiffs claim it unconstitutional that they cannot lease out their investment properties in the manner they desire. But municipalities have great deference in making zoning decisions within their city limits. STRs—typically made to tourists and sometimes to partiers—can be rationally viewed as more likely to erode the residential character of a neighborhood, to reduce the availability of affordable housing in the community, and to increase crowds, traffic, trash, and noise.

### *The City of New Braunfels*

New Braunfels has a population of about 111,000. It is just to the north of San Antonio. It is a conservative town, founded in 1845, with a German-Mexican-Texan heritage.

New Braunfels contains tourist attractions, and has for decades. Its local water-recreation amenities (such as Schlitterbahn) and local community events (such as Wurstfest) can attract visitors from across the state. Thus, it would not be surprising if New Braunfels was one of the first smaller Texas cities to begin

2

experiencing the impact of STRs—with positive effects on its economy, perhaps, but also negative effects on its neighborhoods.

**The City's Short-Term Rental Regulations**

To address concern from its citizenry, New Braunfels adopted zoning rules related to STRs. In doing so, the City has relied on information supplied by its own residents[1] complaining of short-term tenant behavior at STRs, plus the fact that those same complaints were not generally being brought to the City with respect to long-term tenants. ROA.73, 2056 ¶13.

Texas Local Government Code chapter 211 allows cities to adopt municipal zoning ordinances. In compliance with Texas law, New Braunfels adopted comprehensive zoning regulations at chapter 144 of its Code of Ordinances, entitled "Zoning":

> The purpose of this Chapter is to zone the entire area of the city limits of the City of New Braunfels and the districts in accordance with a comprehensive plan for the purpose of promoting health, safety, and the general welfare of the public. The regulations and districts herein have been established in accordance with Chapter 211 of the Texas Local Government Code and … with reasonable consideration for the character of the district and its peculiar suitability for the particular uses, and with the view of … encouraging the most appropriate use of land throughout the community.

---

[1] Plaintiffs dismissively refer to these residents dwelling in the City's residential neighborhoods as "certain interest groups." *See* Appellants' Br. at 11. Meanwhile, Plaintiffs (and their *amici curiae*) do *not* live in the neighborhoods where Plaintiffs wish to insert STRs.

ROA.80. By these regulations, the City has divided its municipal area into various residential, commercial, and industrial zones, with detailed descriptions of what uses are permitted versus prohibited in each zoning type. *See* NEW BRAUNFELS, TEX., ORDINANCES ch. 144, §§ 1.1, 3.4, 4.2.

Under this statutory and municipal authority, New Braunfels adopted zoning regulations that govern STRs within the City based on zoning districts. The City generally defines STRs as being done (1) for compensation, (2) for overnight lodging, and (3) for 30 days or less. ROA.101. By their lawsuit, Plaintiffs complain about one single provision of the City's STR ordinance:

> *"Short Term Rental within Residential Districts is prohibited."*

ROA.102. Importantly, this is not, at all, a complete ban. On the contrary, there are two key undisputed features of this prohibition.

***First***, most zoning districts in New Braunfels continue to allow STRs. This is not a city-wide ban, nor a housing-wide ban. STRs are prohibited only in "Residential Districts." *Id.* That term refers to *single-family* districts and *two-family* districts. ROA.101. In contrast, no such prohibition applies to "Non-Residential Districts," which term includes commercial districts (*e.g.*, resort areas), multifamily districts (*e.g.*, triplexes, apartments, and condos) and mixed-use districts (allowing office, retail, and residential). *Id.* The term "Residential Districts" in the STR

4

regulations "generally includes single-family and two-family residential districts but generally excludes multi-family residential districts." ROA.873-74 ¶2.

Thus, the focus of New Braunfels's STR ban is on those districts where the neighborhood's residential character arguably matters most—single-family and two-family districts. The City has opted for neither an unchecked expansion of STRs nor a draconian resistance to STRs. Instead, New Braunfels has chosen a rational middle ground, allowing proliferation of STRs in appropriate areas of the City, while seeking to maintain historic, family-friendly neighborhoods, insulated from such commercial erosion.

This regulatory approach has been successful. In the historic single-family neighborhoods, STRs are uncommon. ROA.878, 897. Meanwhile, as Plaintiffs concede, there are *over 700* STRs within this small city successfully operating outside those core residential zones. ROA.1046, 1260. In short, New Braunfels has managed to take a regulatory approach to STRs that is simultaneously pro-resident *and* pro-tourist.[2]

***Second***, the City was careful in 2006 not to ban *existing* property uses. As part of its zoning regulations, the City ensured that properties already engaging in STRs could continue doing so. Effective November 8, 2006, while generally

---

[2] To highlight the value of STRs, Plaintiffs tout 4 "black-friendly" STRs in Austin in 1949. *See id.* at 7. But, in 1949, Austin had a population of 132,000. New Braunfels, with its current population of 111,000, has over 700 black-friendly STRs in its city limits. New Braunfels's zoning rules allow STRs to thrive, fully meeting the needs of travelers of all races.

5

prohibiting STRs in certain residential districts, the City grandfathered existing STRs as "legal non-conforming rights." ROA.81. Those grandfathering rights continued with the amended regulations. ROA.102, 873 ¶2.

Yet, each Plaintiff bought his property on full notice of the STR ban *already in place* affecting his non-grandfathered property. This is not a case in which the City pulled the rug out from under homeowners. A prohibition against STRs was first put in place in 2006. ROA.73-81. Plaintiffs bought their five properties years later: Douglas Wayne Mathes in 2011, Daniel Olveda in 2017, Korey Rohlack in 2017, Rafael Marfil (and his company Verge Productions, LLC) in 2018, and Enrico and Naomi Marfil in 2018. ROA.25-26, 921, 993. Had any of Plaintiffs hoped to employ STRs as a means of earning rental income, they should have—and could have—purchased properties where STRs remain allowed.

Notably, the City's zoning ordinance does not prohibit Plaintiffs from allowing short-term visitors to stay at their properties (*i.e.*, family and friends). Instead, Plaintiffs are only prohibited from collecting rent from short-term visitors (*i.e.*, tourists), because their houses are in single-family and two-family districts within the City and lack grandfathered STR rights.[3]

[3] Plaintiffs gain no benefit from their assertion that STRs are "nothing new" and have occurred in New Braunfels "for decades." *See id.* at 6, 10. Boarding houses, trading posts, and saloons were present in the 1800s, but such history would not empower a homeowner in 2025 to engage in such property use at his home free and clear from municipal regulation.

***Plaintiffs Rafael Marfil, Verge Productions, LLC, Enrico Marfil, Naomi Marfil, and Douglas Wayne Mathes***

There are three properties at issue near Schlitterbahn waterpark. The City's Exhibit 2 shows those locations diagonally-lined. ROA.877. From north to south, those three properties are owned by Rafael Marfil (through his company Verge Productions, LLC), Enrico and Naomi Marfil, and Douglas Wayne Mathes. ROA.874 ¶4; ROA.877.

The summary judgment record showed that the waterpark's proximity (zoned C-4) did not overcome that neighborhood's (zoned R-2) longstanding residential character. Schlitterbahn does not operate during the school year. It is open daily during June, July, and the first half of August, is open only on weekends during April, May, the second half of August, and September, and then is closed October through March. ROA.865-66. Even during the busy summer months, the waterpark is closed by 8pm at the latest, at which point the crowds die down, and the only street noise is sirens from a nearby hospital. ROA.866, 922, 965-67. As one neighbor catty-cornered from Mathes stated, "This is an extremely quiet, nice, & upstanding, very special neighborhood that needs to be preserved at all costs." ROA.883. As another neighbor directly behind the Marfils' properties stated, "We're a pretty tight neighborhood, with very young children." ROA.885.

As their zoning map shows, while Schlitterbahn is across the street to the southwest, the three properties are on the edge of a large residential neighborhood,

7

which extends a full kilometer northeast to an old cemetery. ROA.877-78. Plaintiff Rafael Marfil admitted he and his family could potentially decide to live full-time at their New Braunfels property instead of renting it out. ROA.923-24. In fact, all three properties are typically rented out to residents via long-term residential leases. ROA.933-34, 949-51, 986-88.

Plaintiffs' assertion that these properties are "surrounded" by high-traffic commercial uses is false. On the contrary, there is a separate commercial district just to the north of the Marfils' properties, around the intersection of E. San Antonio Street and S. Union Avenue—shown in red on the zoning map. ROA.877. *That* is where the "diner" and "day spa" are located, neither of which is adjacent to—or "surrounds"—Plaintiffs' properties. ROA.877, 1562. In contrast, the "hair-cut studio" and "bakery" are not business establishments at all, but rather are "in-home" occupations that anyone working from home can post on Google Maps. *See id.*; ROA.1236 at 219:20-25; ROA.1562.

Plaintiffs also mischaracterize the quantity of STRs near their properties. In this entire residential neighborhood east of Schlitterbahn, stretching northeast from S. Union Avenue to Comal Cemetery, there is *only one* STR, although it just so happens to be adjacent to Mathes's property. ROA.874 ¶5, 878. The "four other" STRs closer to the Marfils' properties—just like the diner and day spa—are in the

8

*commercial* zone, which is entirely distinct from their residential neighborhood. ROA.877-78.

Plaintiffs also misrepresent the City's legal position on the Marfils' properties. The City has *not* conceded that STRs at these properties would not undermine a sense of community or would not substantially affect the neighborhood's general welfare. On the contrary, the City's representative testified by affidavit:

> It is rational for the City to conclude that allowing STRs specifically at Plaintiffs' properties would undermine the sense of community at the residential-zoned properties surrounding them. It is also rational for the City to conclude that allowing STRs specifically at Plaintiffs' properties would substantially affect the general welfare of their neighborhoods.
>
> ....
>
> Both the City and I believe that STRs at the Marfils' properties could undermine a sense of community in that residential neighborhood, just as the neighbors living there had stated in opposition to the Marfils' zoning change application.

ROA.2053 ¶5, 2055 ¶11.  The summary judgment record establishes the residential character of these Plaintiffs' neighborhood.

### *Plaintiffs Korey Rohlack and Daniel Olveda*

There are also two properties at issue over a mile northeast of Schlitterbahn, close to Loop 46.  The City's Exhibit 5 shows their locations diagonally-lined. ROA.896.  From west to east, those two properties are owned by Korey Rohlack and Daniel Olveda.  ROA.875 ¶8; ROA.896.  The summary judgment record showed

9

that Loop 46's proximity did not overcome that neighborhood's longstanding residential character. As one neighbor directly next-door to Rohlack's property stated, "Not many want this residential area to change. We certainly do not[;] we love the small town feeling." ROA.903.

Plaintiffs' assertion that these two properties are "surrounded" by businesses, again, is false. On the contrary, there is a separate commercial district just to the northeast of the properties—shown in red on the zoning map. ROA.896. *That* is where the "strip center," "gas station," and "sports bar" are located, none of which is adjacent to—or "surrounds"—Plaintiffs' properties. ROA.896, 1480. Plaintiffs also misrepresent that nearby Loop 46 is a "freeway." On the contrary, as the City's representative testified by affidavit:

> Plaintiffs in their Motion use the term "freeway" to describe Business Loop 46 where it intersects Common Street near Daniel Olveda's and Korey Rohlack's properties. Plaintiffs are incorrect. It is not a freeway. There are stoplights at the intersection of Business Loop 46 and Common Street, where Business Loop 46 has merely two lanes per side.

ROA.2054 ¶8.

Unlike the commercial-zoned strips lining Loop 46, Plaintiffs' neighborhood is residential, stretching 2/3 of a kilometer southwest away from Loop 46 to Comal Cemetery. ROA.896-97. Moreover, there are no STRs *anywhere* near them in that entire single-family-homes neighborhood. ROA.875 ¶9, 897.

Indeed, both Rohlack and Olveda want to use these properties as their homes. Olveda lived there from 2017 to 2020 and hopes to keep it until his daughter is old enough to live there.  ROA.1000-01, 13.  Rohlack plans to live there once he builds a house on the lot.  ROA.1026-28.  As Rohlack himself conceded at his deposition, "It is a residential neighborhood," and again, "It is a good location for a residence." ROA.1031, 33.  The summary judgment record establishes the residential character of these Plaintiffs' neighborhood.

***Plaintiffs' Lawsuit Against the City***

Plaintiffs (none of whom currently live at the five properties described above) seek the right to lease their houses as STRs.  On March 30, 2020, Plaintiffs filed suit in federal court to strike down the City's zoning rule:  "Short-Term Rental within Residential Districts is prohibited."  ROA.15.  Plaintiffs assert claims under the equal protection and due process clauses of the United States Constitution and the Texas Constitution.  ROA.493-98.

In 2020, New Braunfels filed a motion to dismiss.  ROA.54-106.  After the Magistrate Judge in 2021 recommended granting the City's motion to dismiss, *see* ROA.286-303, the district court in 2022 adopted that recommendation and dismissed Plaintiffs' claims with prejudice, *see* ROA.8-9.  In 2023, this Court reversed the dismissal and remanded.  ROA.437-38.

Plaintiffs are incorrect, however, to construe this Court's reversal as an endorsement of any of Plaintiffs' claims or a rejection of any of the City's defenses. The two judges in their majority opinion said no such thing. Plaintiffs' speculation regarding what may have motivated the remand is merely that—speculation. Here is the entirety of this Court's analysis:

> This court's relevant case law, however, indicates that some factual development may often occur in these cases, and that summary judgment may often follow. We make no prediction on the future course of this case, but based on the complaint's well-pled allegations, plaintiffs are entitled to engage in discovery in an attempt to surmount the currently high bar for challenging local zoning ordinances under the Constitution.

*Marfil*, 70 F.4th at 893 (citation omitted).

Following the reversal and remand, the parties agreed to a seven-month discovery period. ROA.454-55. In early 2024, after conducting discovery, both sides filed cross-motions for summary judgment, *see* ROA.852-1861, followed by responses and replies, *see* ROA.1862-2131, and in late 2024, both sides filed briefing on supplemental authority, *see* ROA.2132-46.

Notably, Plaintiffs did not seek to prove that New Braunfels's neighborhoods were uniquely positioned such that the City's STR ban was irrational. Instead, Plaintiffs relied on other cities' studies and claimed that the City failed to distinguish itself. ROA.1057-59.

The City, in turn, not only explained that Plaintiffs were misplacing the burden of proof under the rational basis test, *see* ROA.1880, but also showed that the studies relied on by Plaintiffs (in Austin, Dallas, California, and New York) *supported* New Braunfels's STR regulations, *see* ROA.1877-79, showed that multiple other analyses across the country further supported New Braunfels's STR regulations, *see* ROA.859-65 ¶¶20, 27, 31, and explained that the City could also rely on the experiential data New Braunfels residents themselves provided, including complaints about nuisance activities at STRs, *see* ROA.1880 ¶49.[4]

The City did not argue that "evidence is wholly irrelevant." *See* Appellants' Br. at 22. Rather, the City's contention was, and is, as follows: "As a matter of law, at the summary judgment stage, the City has advanced legitimate rational bases to support its Ordinance, and Plaintiffs have failed to raise a fact issue that could negate those rational bases." ROA.2121.

The district court agreed with the City. Following a hearing on December 5, 2024, *see* ROA.2155-2219, the district court entered summary judgment in favor of the City on January 10, 2025, *see* ROA.2148-52.

In their Brief, Plaintiffs mischaracterize the district court's ruling. While Plaintiffs insist that the court's summary judgment was entirely based on the "same

---

[4] As discussed in this Brief, the summary judgment record refutes the accusations by Plaintiffs (and multiple of the *amici curiae*) that the City has "no data" and "no evidence" to support its rational bases. *See id.* at 11, 18, 21, 46.

logic" as the Rule 12(b)(6) dismissal, *see* Appellants' Br. at 23, the court *also* stated it had considered all the parties' summary judgment filings, *see* ROA.2148. While Plaintiffs insist the court "did not consider evidence," *see* Appellants' Br. at 24, the court expressly referenced "numerous statements from affected residents" in the record that supported the City's rational bases, *see* ROA.2151. While Plaintiffs insist the court held that "local opposition" is sufficient rational basis, *see* Appellants' Br. at 24, the court did not even mention local opposition as a basis, *see* ROA.2148-52. While Plaintiffs insist the court "did not address" Texas law, *see* Appellants' Br. at 24, the court devoted a separate section to Plaintiffs' *Patel* claim, an as-applied claim under the Texas Constitution, *see* ROA.2151-52.

On the summary judgment record, the City of New Braunfels is entitled to affirmance of the district court's judgment. The record evidence shows that the City's STR prohibition easily satisfies the rational basis test.

## SUMMARY OF THE ARGUMENT

This Court remanded this case, reversing a Rule 12(b)(6) dismissal, to allow Plaintiffs to engage in discovery. Now, discovery is complete, and the record evidence (which Plaintiffs and the various *amici curiae* seem to pretend does not exist) shows that Plaintiffs cannot negate the rational bases for the City's STR ordinance.

The City's STR prohibition can be upheld based on preserving the residential-neighborhood character of single-family and two-family residential districts. The City's evidence established that, even with Schlitterbahn or a commercial strip center nearby, Plaintiffs' neighborhoods themselves possess a residential character, being "extremely quiet," reflecting a "small friendly town," where "family comes first," and with "very young children." Plaintiffs acknowledged they could gladly live long-term there, just like the neighbors to Plaintiffs' properties do today.

The City's STR prohibition can be upheld based on STRs' negative impact on the availability of affordable housing. STRs reduce the houses available to live in long-term, which by basic principles of supply-and-demand can be expected to increase rents for residents in the community. This rational basis is amply supported by the City's proffered economic studies and case law, as well as the City's evidence showing Plaintiffs' properties are presently leased long-term, which housing would be eliminated if they were used for STRs instead.

15

The City's STR prohibition can be upheld based on nuisance activity at STRs, including crowds, noise, and trash. The evidence shows Plaintiffs' own STR use included "renters up partying until 4:00 a.m." The evidence includes studies regarding 911 and 311 calls from surrounding properties—in Dallas, Santa Barbara, and New York City—consistently revealing that STRs increase noise. The evidence shows New Braunfels residents complained of nuisance behavior at STRs but did not make those same complaints with respect to long-term tenants.

Each rational basis—supported by evidence—defeats Plaintiffs' facial and as-applied challenges to the City's STR prohibition under the due process and equal protection clauses of the United States Constitution and the Texas Constitution.

Plaintiffs' only remaining claim is an as-applied oppressiveness claim under the due course of law clause of the Texas Constitution. The summary judgment evidence defeats this claim as well. First, the City's STR prohibition does not operate as an absolute bar against Plaintiffs' operating in their chosen profession. Second, Plaintiffs have no vested property right to commence STRs when each purchased their properties with the STR prohibition already in place. Third, the record evidence shows no oppressiveness. Plaintiffs successfully earn profits by renting out their properties on a long-term basis, and their only complaint is that they could earn more profits if they switched to STRs. No case law supports Plaintiffs' having a viable oppressiveness claim under these circumstances.

16

**ARGUMENT**

The district court correctly held that New Braunfels's zoning ordinance, prohibiting new short-term leasing of homes in single-family and two-family residential districts, easily satisfies the rational basis test. ROA.2150-52. The STR prohibition promotes the legitimate municipal purposes of (1) preserving the residential character of neighborhoods, (2) safeguarding the availability of affordable housing, and (3) protecting neighborhoods from STRs' nuisance issues such as noise, traffic, and trash. ROA.874 ¶3.

New Braunfels acted well within the parameters of its zoning authority, notwithstanding Plaintiffs' contrary policy preferences. New Braunfels's residents have had their say for their community. Since 2006, New Braunfels has decided that not every house in the city can engage in STRs. Plaintiffs may wish the law were otherwise, but after purchasing their properties in zoning districts where STRs were prohibited, Plaintiffs' recourse for those properties is not the courts, but the ballot box, to change the law through the democratic process, if they can.

I.    **The City's STR prohibition does not violate the due process and equal protection clauses of the United States Constitution.**

Plaintiffs assert facial and as-applied challenges to the City's STR prohibition under the due process and equal protection clauses of the United States Constitution. Under federal law, a local regulation will be sustained so long as the classification drawn thereby is rationally related to a legitimate governmental interest. *See City of*

17

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The Constitution presumes that even "improvident" decisions can and will eventually be rectified by the democratic process. *See id.*

Municipal zoning should seldom be the concern of federal courts. *Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986). When a zoning ordinance is challenged, it is presumed to be valid. *Cleburne*, 473 U.S. at 440. A zoning ordinance cannot be declared unconstitutional unless its provisions are "clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." *See Vill. of Euclid v. Amber Realty Co.*, 272 U.S. 365, 395 (1926).

If the existence of a rational basis is "at least debatable," there is no constitutional violation. *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 175 (5th Cir. 1996). The deference is so substantial that for Plaintiffs to successfully challenge the City's legislative judgment, Plaintiffs must convince the court that the legislative facts on which the ordinance is apparently based could not reasonably be conceived to be true by the governmental decisionmaker. *Id.*

Under Supreme Court precedent, Plaintiffs would need to show there is no reasonably conceivable state of facts that could provide a rational basis for the City's zoning ordinance that STRs not be located in one- and two-family residential zones (unless grandfathered). *See Heller v. Doe*, 509 U.S. 312, 319-21 (1993). New

Braunfels's classifications are accorded a strong presumption of validity. *Id.* at 319. The ordinance is constitutional if there is any reasonably *conceivable* state of facts that could provide a rational basis for its classifications. *Id.* at 320. Plaintiffs have the burden to negate every conceivable basis which might support the ordinance. *Id.* There is no need for a perfect fit between means and ends. *Id.* at 321.

Several cases by federal circuit courts of appeals show that STR regulations survive rational basis review.

***First***, 36 years ago, this Court affirmed the dismissal of rational-basis challenges to municipal restrictions on short-term use of residential property. *See Jackson Court Condos. v. City of New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989). In *Jackson*, the district court had upheld a municipal ban on time-sharing within certain residential districts at the summary judgment stage. *See Jackson Court Condos. v. City of New Orleans*, 665 F. Supp. 1235, 1236-37, 1254 (E.D. La. 1987). The city had concluded that a "characteristic of transients is that they do not have a sense of belonging to the neighborhood, and thus no neighborhood pride and commitment." *See id.* at 1238. This Court agreed, declaring, "Certainly the protection of residential [neighborhood] integrity is a legitimate objective of a zoning regulation." *See Jackson*, 874 F.2d at 1078. Also, in *Jackson*, the city had concluded that "transient attitudes can produce effects such as loudness, carelessness, littering and vandalism." *See Jackson*, 665 F. Supp. at 1238. Again,

19

this Court agreed, declaring that the city's concern regarding an increase in noise, littering, and vandalism—which "might" be associated with transient users—"was a legitimate concern of the city and was [at least] debatable." *See Jackson*, 874 F.2d at 1078.[5]

The same legitimate governmental concerns regarding short-term use of residential properties that enabled a ban on time-sharing in New Orleans, Louisiana neighborhoods apply equally to enable a ban on STRs in New Braunfels, Texas neighborhoods.

***Second***, in 2022, this Court again approved the same legitimate bases relied on in *Jackson* to support municipal restrictions on STRs at residential properties. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 328-29 (5th Cir. 2022). Due to a residency requirement, this Court struck down a municipal ban on STRs under the dormant Commerce Clause, which applies a "virtually per se invalid" standard of review. *See id.* at 328. However, in doing so, this Court entered two holdings that confirmed an STR ban which does not contain residency requirements (as here) could easily satisfy the rational basis test. First, this Court approved the very legitimate bases for an STR ban relied on here, holding "[t]here's no question" that "preventing nuisances, promoting affordable housing, and protecting

---

[5] Plaintiffs assert that the plaintiff in *Jackson* had stipulated to time-share properties increasing nuisance behavior. *See id.* at 41. On the contrary, the plaintiff in *Jackson* merely stipulated that the defendant's City Planning Commission had *reached* that conclusion. *See Jackson*, 665 F. Supp. at 1238. This Court held this was "debatable," not that it was stipulated or established.

neighborhoods' residential character" are "legitimate local purposes." *See id.* Second, this Court endorsed "an obvious and straightforward" method to meet those goals: "cap the share of housing units that can be used as STRs." *See id.* at 329.

A cap on STRs is precisely what New Braunfels has done. While allowing STRs in most neighborhoods, the City has generally capped them in single-family and two-family residential districts at the level in which they were present in 2011.

***Third***, also in 2022, the Third Circuit affirmed the dismissal of challenges to a municipal ban against STRs under the rational basis test. *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 680-81 (3d Cir. 2022). In that case, the district court relied on the same three legitimate bases as here: protecting long-term housing supply, reducing STRs' "deleterious effects" on residential neighborhoods, and protecting their residential character. *See id.* In light of these "legitimate state interests," the rational basis test was held to be "easily satisfied." *See id.*

Federal district courts, too, unanimously hold that bans and regulations against STRs satisfy the low bar of the rational basis test. *See Villanueva v. Vill. of Volente*, No. 1:23-CV-1246, 2024 U.S. Dist. LEXIS 85735, at *44 (W.D. Tex. May 13, 2024); *Hignell v. City of New Orleans*, No. 19-13773, 2024 U.S. Dist. LEXIS 34030, at *39-42 (E.D. La. Feb. 28, 2024); *MDKC, LLC v. City of Kansas City*, No. 4:23-CV-395, 2023 U.S. Dist. LEXIS 176808, at *25-26 (W.D. Mo. Oct. 2, 2023); *Short Term Rental Alliance of San Diego v. City of San Diego*,

No. 22CV1831, 2023 U.S. Dist. LEXIS 102156, at *30-33 (S.D. Cal. June 12, 2023);

*Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 795-98 (W.D. Mich. 2022);

*Selvaggi v. Borough of Point Pleasant Beach*, No. 22-00708, 2022 U.S. Dist. LEXIS

93746, at *15-17 (D.N.J. May 25, 2022); *King v. City of Marion*, No. 3:19-CV-

00207, 2020 U.S. Dist. LEXIS 16805, at *31 (E.D. Ark. Feb. 3, 2020); *Weisenberg

v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 733-34 (E.D.N.Y. 2019); *Karol

v. City of N.Y.*, 396 F. Supp. 3d 309, 322-23 (S.D.N.Y. 2019); *Murphy v. Walworth

County*, 383 F. Supp. 3d 843, 850-51 (E.D. Wis. 2019).

As all these cases confirm, a federal court can readily acknowledge that the

more short-term the resident, the less likely he is to engage in community betterment

or to consider any adverse impacts from his visit on the surrounding neighborhood.

Do homeowners generally treat their homes with greater care than renters?  Of

course they do.  We all know that.  Similarly, are long-term renters more invested in

a neighborhood, and the cares and concerns of their next-door neighbors they see

every week, than are weekend visitors in town for a raucous bachelor party at an

STR?  Of course they are.  These common-sense legislative distinctions do not

require more than "momentary reflection" to arrive at the conclusion that a city has

a rational basis for distinguishing between long-term tenants and STRs. *See Mahone

v. Addicks Util. Dist.*, 836 F.2d 921, 936 (5th Cir. 1988).  The equal protection and

due process clauses do not require a court to ignore common sense and suspend

22

disbelief when reviewing a city's legislative classifications. The standard is *the opposite*—whether there is any debatable basis for the legislative classification. If there is, then the classification survives rational-basis review.

In line with this federal case law and common-sense recognition, the City advances three rational bases. If this Court concludes that Plaintiffs failed to negate any one of these three, such that the City's basis remains "at least debatable," then summary judgment must be affirmed.

### A.    The summary judgment can be affirmed based on the rational basis of preserving the residential character of neighborhoods.

The City's STR prohibition can be upheld based on preserving the residential-neighborhood character of single-family and two-family residential districts. While a one-night stay in a home may technically be a "residential" use, no one would rationally contend such use is of the same character as a 20-year stay. As anyone who has lived in the same home for multiple years can attest, the longer a neighbor resides next door, the more likely people's lives will become intertwined, including borrowing household items, babysitting, pet-sitting, and backyard gatherings. And, as anyone who has used Airbnb or Vrbo for a three-night stay can attest, no community investment whatsoever occurs.

This Court has endorsed this rational basis. *See Hignell-Stark*, 46 F.4th at 328 (agreeing that "protecting neighborhoods' residential character" is a legitimate local purpose in regulating STRs) ; *Yur-Mar, LLC v. Jefferson Parish Council*, 451 Fed.

App'x 397, 401 (5th Cir. 2011) (promoting neighborhood's "identity and sense of community" is a legitimate governmental interest); *Jackson*, 874 F.2d at 1078 ("Certainly the protection of residential integrity is a legitimate objective of a zoning regulation.").

This view is universally shared across the country.  As one California court observed three decades ago:

> Short-term tenants have little interest in public agencies or in the welfare of the citizenry.  They do not participate in local government, coach little league, or join the hospital guild.  They do not lead a scout troop, volunteer at the library, or keep an eye on an elderly neighbor.  Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Ewing v. City of Carmel-By-The-Sea*, 286 Cal. Rptr. 382, 388 (Ct. App. 1991).  Or, as the Pennsylvania Supreme Court noted:

> The permanence and stability of people living in single-family residential zoning districts creates a sense of community, cultivates and fosters relationships, and provides an overall quality of a place where people are invested and engaged in their neighborhood and care about each other.

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 900 (Pa. 2019).

Statisticians and legal scholars, too, have acknowledged the rationality of the City's concern regarding neighborhood character.  *See, e.g.*, Laiyang Ke, *et al.*, *Airbnb and neighborhood crime*, PLOS ONE 16(7) (July 14, 2021) (finding increase in crime due to STRs' erosion of neighborhood social organization and failure "to

24

contribute to critical neighborhood social dynamics"); Nathan P. Bettenhausen, *There Goes the Neighborhood: Regulating the Growing Short-Term Rental Industry*, 57 ORANGE CTY. LAWYER 16, 19 (July 2015) (failing to regulate STRs would "risk endangering the residential character of their communities").

Plaintiffs' own experiences at STRs confirm this reality that short-term tenants do not contribute to the lived-in character of the surrounding neighborhood.

> Q.   You're generally – when you're at the short-term rental you're there to visit the town as a tourist, right?
>
> A.   Correct.
>
> Q.   And you're not making friends with neighbors the way you do when you're actually living somewhere. Is that fair?
>
> A.   Yes.

ROA.970. As another Plaintiff conceded, community involvement when staying at an STR is no different from when staying at a hotel. ROA.919-20.

Plaintiffs' experiences at their own residences equally confirm this reality. For instance, Enrico and Naomi Marfil made good friends and playmates for their children where they lived for five years, but could not give a single name of a New Braunfels neighbor despite owning that rental property since 2018. ROA.940, 961-62, 971-73. As another Plaintiff conceded:

> Q.   So, in other words, it can be a good thing to get to know your neighbors better the more you've been somewhere, right?
>
> A.   It can be, yeah, for sure.

ROA.992.

Plaintiffs' primary attack on the City's residential-character rational basis is an allegation that their properties' neighborhoods have something less than a residential character. However, the facts defeat that as-applied claim.

The Marfils' and Mathes's three properties are close to Schlitterbahn across S. Union Avenue, but on *their* side of S. Union Avenue, the neighborhood is residential, stretching a full kilometer northeast to an old cemetery. ROA.877-78. There is only one (grandfathered) STR in that entire residential neighborhood, as the other four STRs north of the Marfils' properties are in the nearby commercial zone. *Id.* Likewise, the only nearby business properties, such as a "diner" and "day spa," are in that same commercial zoning district to the north. ROA.877, 1562.

If there were any concern regarding the impact of Schlitterbahn or the other nearby commercial zone on the Marfils' and Mathes' neighborhood, the Court can see what their own neighbors said in opposition to the Marfils' application to change their zoning to conduct STRs:

- "It is a fine neighborhood, happy and friendly."

- "This is an extremely quiet, nice, & upstanding, very special neighborhood that needs to be preserved at all costs. All neighbors have fought, throughout the decades, to preserve such a special neighborhood, and keep out all creep, of commercial development, and especially any/all overnight rentals."

- "We would like to keep this area as residential as possible to continue to foster an environment of a 'small friendly town.'"

26

- "I want to maintain a residential neighborhood where family comes first."

- "We're a pretty tight neighborhood, with very young children."

- "This respectable neighborhood is where our German Ancestors first settled."

- "If a firm line is not kept down the middle of Union, such creep will keep creeping until this beautiful, historic, charming neighborhood is just a bunch of tattoo parlors, food truck lots, gas stations and more."

- "I have been living here for 14 years. I'm against the zone change."

- "I have lived here for 48 years and I love New Braunfels so let's keep our residential neighborhood."

ROA.875 ¶7, 883-94. Indeed, Rafael Marfil admitted that he and his family too might decide to live there in the future. ROA.923-24.

Similarly, Olveda's and Rohlack's two properties are close to the commercial zones along Loop 46, but on *their* side of those commercial strips, the neighborhood is residential, stretching 2/3 of a kilometer southwest to the cemetery. ROA.896-97. There are no STRs anywhere near them. *Id.* The only nearby businesses are in the "strip center" along Loop 46—which, contrary to Plaintiffs' briefing, is not a freeway, but a street with a traffic light and two lanes in each direction. ROA.896, 1480, 2054 ¶8.

If there were any concern regarding the strip center's impact on Olveda's and Rohlack's neighborhood, the Court can see what their own neighbors said in opposition to their application to change their zoning to conduct STRs:

27

- "Requested zoning is not consistent with adjacent neighborhood properties."

- "We do not wish to have commercial activity behind our house and the associated issues with it."

- "This is obviously a move to put the city's and our neighbors' opportunity to earn money over the rights of resident homeowners to live in peace."

- "Not many want this residential area to change. We certainly do not[;] we love the small town feeling."

ROA.876 ¶11, 900-03.

Indeed, Olveda and Rohlack themselves want to use these properties as long-term homes. Olveda lived there from 2017 to 2020 (the prior owner lived there for 15 years), considers it a "world class location" to live at, and hopes to keep it until his daughter is old enough to live there. ROA.1001-04, 11-13. Rohlack, too, plans to live there once he builds a house on his lot. ROA.1026-28. Rohlack conceded at his deposition that it is a "good location" for a long-term residence. ROA.1033. Regarding the character of the surrounding neighborhood, Rohlack testified:

Q. Do you know whether any of those [surrounding] properties have families with kids living in them?

A. It is a residential neighborhood. I would assume so since it is residential homes.

ROA.1031.

Plaintiffs' admissions, the views of the residents in these two neighborhoods, and the City's adoption of those views are not irrational. The neighbors' comments

28

alone render it rational—and certainly "at least debatable"—that the City's STR prohibition promotes residential character in the two neighborhoods.

The remainder of Plaintiffs' attacks on this rational basis are easily dispatched.

First, Plaintiffs assert that "mere opposition" is insufficient to support a zoning ordinance. But, here, the residents' opposition is based on—and evidences—the very residential character that rationally supports the STR prohibition. Unlike Plaintiffs, their lawyers, and their amici curiae, *these people actually live there*. Their testimonials directly refute the claim that these neighborhoods lack residential character due to the proximity of Schlitterbahn or other businesses. Surely, this is the very evidence this Court remanded this case to receive.

Second, Plaintiffs claim the City "admitted" that additional STRs would not impair the neighborhoods' residential character. But, Plaintiffs made the same claim below, and the City's representative responded, under oath, that the City did not make that admission. ROA.2055 ¶11. On the contrary, the City contends that STRs in single-family and two-family zoning districts (including Plaintiffs' neighborhoods) would tend to undermine sense of community and substantially affect the districts' general welfare. ROA.2053 ¶5.

Third, Plaintiffs point out that STR tenants are engaging in "residential" activities during their short stay. *See JBrice Holdings, LLC v. Wilcrest Walk*

29

*Townhomes Ass'n*, 644 S.W.3d 179, 184 (Tex. 2022). But that is not the issue. The issue is the short *duration* of the stay—whether "residential" or not—which type of use can transform a neighborhood, from a communal place for families to take root and invest in each other's lives, into a tourist area built only for bursts of recreational enjoyment. These are fundamentally different in character and use. ROA.2053 ¶¶3-5. As multiple courts have recognized, STRs can rationally be regulated because tourists and other transients are less likely to contribute to neighborhood communal activities—*e.g.*, participating in local government, coaching little league, joining a hospital guild, leading a scout troop, volunteering at a library, tending to elderly neighbors, babysitting, pet-sitting, and generating childhood friends and playmates. Even if allowing STRs might be rational in view of STR tenants' residential-type conduct within the homes, so too prohibiting STRs would be rational in view of STR tenants' negative impact on the surrounding neighborhood's lived-in, long-term residential character.

Just because a use qualifies as "residential," does not mean it must be allowed in residential districts. For example, residential activities occur in apartment complexes and hotels, but a city can exclude both from single-family residential areas. Plaintiffs' approach would universally authorize STRs in every house in every residential district in every city in the country. That is not the law.

30

Fourth, Plaintiffs complain that each of their properties is near the edge of a commercial district.  ROA.877, 896.  But that does not suffice to require STRs be allowed under the constitution, as the Texas Supreme Court has made clear.

> [T]he lots in this case are on the perimeter [of the zoning district].  We feel that this is a distinction without a difference.  If the zoned area may be encroached upon from the edge, the effect thereof is to cause the comprehensive plan to collapse like the fall of a row of dominoes when the first in the row is knocked over.

*Hunt v. City of San Antonio*, 462 S.W.2d 536, 540 (Tex. 1971).  The summary judgment record establishes that, notwithstanding the commercial districts in one direction, Plaintiffs' properties are surrounded by residential homes, and the residents of those very homes confirm the neighborhoods' longstanding residential character that is rationally worth preserving.  ROA.877-904.

Summary judgment can be affirmed based solely on the rational basis of residential character.  On the facts of this case, this is not a close call.  It is rational for the City to believe that excluding STRs from single-family houses and duplexes will help preserve the surrounding neighborhood's residential character, both generally (refuting a facial challenge) and in Plaintiffs' neighborhoods specifically (refuting an as-applied challenge).

**B.    The summary judgment can be affirmed based on the rational basis of reducing STRs' negative impact on the availability of housing in the community.**

The City's STR prohibition can be upheld based solely on STRs' negative impact on the availability of affordable housing. Certainly, having affordable housing for residents "promote[s] health and the general welfare." *See* TEX. LOC. GOV'T CODE § 211.004(a)(3); ROA.2056-57 ¶16.

Plaintiffs misconstrue this proffered rational basis. The problem is not that property values are raised for home buyers (and sellers), but that there are fewer houses available to live in, because STRs are only available for short-term visits, which by basic principles of supply-and-demand can be expected to increase rents for long-term residents in the community. *That* is what the City presented on summary judgment. ROA.864 ¶31; ROA.1883 ¶56.

Thus, Plaintiffs are mistaken that this rational basis could support the banning of long-term rentals, including at owners' second homes where STRs are prohibited, because long-term rentals have the *opposite* effect as STRs, generally keeping housing units available in the community. Long-term rentals generally promote affordable housing, while STRs do not.

This Court has endorsed affordable housing's availability as a legitimate basis to regulate STRs in residential-zoned districts. In *Hignell-Stark*, this Court held both that a city's local interest in promoting affordable housing is a legitimate local

32

purpose and that a city could conceivably accomplish that local interest by capping the number of STRs in residential neighborhoods. *See Hignell-Stark*, 46 F.4th at 328-29. Under the rational basis test, restricting the number of STRs plainly increases the availability of long-term housing. *See Karol*, 396 F. Supp. 3d at 323 (dismissing claim that STR prohibitions are irrational, based in part on the city's legitimate interest in ensuring permanent housing stock).[6]

For supporting data, the City directed the district court to multiple studies that confirm STRs negatively affect the availability of affordable long-term housing. *See, e.g.*, Murray Cox & Kenneth Haar, *Platform Failures: How short-term rental platforms like Airbnb fail to cooperate with cities and the need for strong regulations to protect housing*, GUE/NGL STUDY (Dec. 9, 2020) ("Impact on housing from short-term rentals is real and proven"); Allyson E. Gold, *Community Consequences of Airbnb*, 94 WASH. L. REV. 1577, 1589-93 (Dec. 2019) ("Airbnb rentals have a sizeable impact on the availability of permanent rental housing [in the locality] with consequent pressure on rents."); Diamond Smith, *Renting Diversity: Airbnb as the Modern Form of Housing Discrimination*, 67 DEPAUL L. REV. 581 (Spring 2018) ("the sharing economy perpetuates gentrification, adversely affecting

---

[6] In contrast, in the two cases cited by Plaintiffs on this point, either the Texas court of appeals (in Austin) was not applying the rational basis test in the first place, *see Zaatari v. City of Austin*, 615 S.W.3d 172, 188-90 (Tex. App.—Austin 2019, pet. denied), or the Texas trial judge (in Dallas) misapplied it by rejecting the city's asserted housing impacts as not "conclusive" or "quantified," *see* ROA.1094.

neighborhoods historically inhabited by Blacks and Hispanics"); Dayne Lee, *How Airbnb Short-Term Rentals Exacerbate Los Angeles's Affordable Housing Crisis: Analysis and Policy Recommendations*, 10 HARV. L. & POL'Y REV. 229, 235-40 (Winter 2016) ("Airbnb causes a small, but notable, increase in citywide rents.").[7] These studies alone render it rational—and certainly "at least debatable"—that the City's STR prohibition improves housing availability.

Plaintiffs accuse the City of making an "about-face" from its earlier argument that STRs could reduce property values. But, again, Plaintiffs mischaracterize the City's arguments. As the City explained below, whereas an STR could decrease the value of its *adjacent* houses, *see* ROA.173, the overall impact of STRs in residential neighborhoods is to remove those properties from long-term residents' ownership and rentals, thereby reducing housing options and increasing rents in the *overall* community, *see* ROA.2128.

Importantly, Plaintiffs' own properties confirm this rational basis. Due to the City's STR prohibition, the four properties owned by Plaintiffs with houses on them are leased to residents on a long-term basis. ROA.933 (Rafael Marfil), 949-51 (Enrico Marfil), 986-88 (Mathes), 1008-10 (Olveda). Yet, by their lawsuit, Plaintiffs seek to remove these houses from the long-term rental market in New Braunfels so

---

[7] As the Harvard Business Review article cited by *amici curiae* shows, *see* Doc. 40 at p. 20, one might debate the *policy* of whether the various benefits of STRs outweigh this rent increase, but one must acknowledge that the rent increase for long-term tenants caused by STRs is real.

they can be rented out as STRs to tourists. The summary judgment evidence in this case, therefore, confirms the rational basis of housing availability, as shown by studies and as endorsed by this Court.

Plaintiffs, notably, did not engage any expert witness to seek to negate the City's rational basis of promoting housing availability. *See Heller*, 509 U.S. at 320 (plaintiffs have the burden to negate every conceivable basis which might support the ordinance). Plaintiffs' only attack against this rational basis, then, is that other regulatory options are available to promote housing availability. However—setting aside that the only authority cited for these options is Plaintiffs' counsel's own lobbying brochure, *see* Appellants' Br. at 45—the existence of other regulatory options is immaterial under the rational basis test. *See Vance v. Bradley*, 440 U.S. 93, 102 n.20 (1979) (noting the irrelevance under rational basis review that "other alternatives might achieve approximately the same results").

Therefore, the summary judgment can be affirmed based on the rational basis of reducing STRs' negative impact on housing availability in the New Braunfels community. As one neighbor stated in opposition to STRs at Plaintiffs' properties, "I have lived here for 48 years and I love New Braunfels so let's keep our residential neighborhood." ROA.894.

35

**C.    The summary judgment can be affirmed based on the rational basis of minimizing nuisance-type activities that can occur at STRs.**

The City's STR prohibition can be upheld based solely on tourists' nuisance activity at STRs. New Braunfels's zoning ordinance declares this rational basis: "This section is intended to … ensur[e] that [STR] use does not create adverse impacts to residential neighborhoods due to excessive traffic, noise, and density." ROA.100. It is rational for a city to believe that guests residing in a home for only a few days are less likely to worry about their reputation in the community, including such issues as crowds, noise, and trash. *See Nekrilov*, 45 F.4th at 680-81.

The fundamental problem with Plaintiffs' response on this issue is their misplacement of the burden of proof. Plaintiffs accuse the City of failing to prove that New Braunfels experiences more nuisance activities at STRs than at other residential properties, but Plaintiffs themselves introduce zero evidence that there are *not* more nuisance activities at those STRs. *See Heller*, 509 U.S. at 320 (plaintiffs have the burden to negate every conceivable basis for an ordinance). Summary judgment should be affirmed based on three contents of the record: (1) nuisance activity at Plaintiffs' own properties; (2) other cities' experiences; and (3) New Braunfels residents' nuisance complaints regarding STRs.

*First*, the evidence regarding Plaintiffs' own properties supports this rational basis. It turns out that Plaintiff Rafael Marfil, despite knowing STRs were prohibited, engaged in illegal STRs at his property before being caught by the City.

36

ROA.925-26. It also turns out that Marfil's own STR tenants engaged in the very nuisance activity that Plaintiffs insist to this Court is not happening. As stated by the neighbor behind Marfil's property:

> Since Mr. Marfil has purchased the home behind me he has illegally rented the home out as an STR…. During this time we have had renters up partying until after 4:00 am. This is a nuisance and it is interrupting my family's sleep….

> My wife and I want to retire in this home. If you allow STRs in our neighborhood it will no longer be family oriented nor the place anyone wants to live.

ROA.885. Meanwhile, there is no evidence of one single complaint about Plaintiffs' properties when they were *not* being used for STRs.

This alone is sufficient to uphold the City's rational basis. Plaintiffs cannot negate that STRs create nuisance-type activities when Plaintiffs' own STR tenants have engaged in nuisance-type activities.

Surely, this is why a prospective buyer of a house, upon learning that both sides of the property are listed on Airbnb, would likely opt not to make that house his family home. It is entirely rational to view STRs as creating the frustrating uncertainty of a rental-by-rental potential for excessive nighttime noise. *See, e.g.*, Myah Taylor, *Plano has a short-term rental problem*, DALLAS MORNING NEWS (Feb. 17, 2023) (next door neighbor on each new STR tenant: "Is this going to be a day where I'm going to have to call the police?"). As Plaintiffs conceded:

37

> Q.    Don't you agree that it could be a reasonable position for someone to take that they prefer not to have a short-term rental next door?
>
> A.    I would assume it could be reasonable, yeah.

ROA.1017.    The City can regulate based on this general-welfare concern.  *See Jackson*, 874 F.2d at 1078.

*Second*, third-party articles and studies support this rational basis.  Plaintiffs fault the City for not conducting their own in-city analysis, but under the rational basis test, a city can rely on other cities' experiences.  *See Heller*, 509 U.S. at 320 ("empirical data" is not required); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222-23 (5th Cir. 2013) ("post hoc perceived rationale" is sufficient so long as the facts do not controvert it); *Villanueva*, 2024 U.S. Dist. LEXIS 85735, at *27 ("the Village was entitled to rely on the experiences of other municipalities in crafting its STR regulations").

The City relies on third-party sources that support the connection between STRs and nuisance-type behavior.  ROA.862-63.  For instance:

> As short-term rental listings increase in an area, locals experience problems such as "unfamiliar cars blocking driveways, late night parties on formerly quiet streets, and concerns about child safety in an environment with fewer familiar eyes on the street."

Allyson E. Gold, 94 WASH. L. REV. at 1581-82.  Indeed, the company Airbnb essentially admitted this issue in its 2020 public SEC filing:

38

> We have no control over or ability to predict the actions of our users …
> either during the guest's stay, experience, or otherwise, and therefore,
> we cannot guarantee the safety of our hosts, guests, and third parties.
> The actions of hosts, guests, and other third parties have resulted and
> can further result in fatalities, injuries, other bodily harm, fraud,
> invasion of privacy, property damage [and] discrimination ….

Airbnb, Inc., SEC Form S-1 Registration Statement, p. 45 (Nov. 16, 2020).

Even more so, the City relies on the very studies that Plaintiffs claim prove

*their* case. Upon review, those other cities' experiences actually prove that New

Braunfels's STR ordinance—confining STRs to zoning districts outside the single-

family and two-family districts—is a rational regulatory approach. This includes all

four of the studies discussed by Plaintiffs—in Dallas, California, New York City,

and Austin. *See* Appellants' Br. at 8-10.

The Dallas study supports New Braunfels. ROA.1073-88. The data from

Dallas showed there were *more* "311 and 911 calls associated with" STR properties

than with other properties. ROA.1074.

| Table 4: Observed Differences for 911 and 311 Call for STRs and non-STRs | | | |
|---|---|---|---|
| Call Type | STR Average Calls per property over 1 year | non-STR Average Calls per property over 1 year | Observed Difference |
| 311 | 2.17 | 1.53 | 0.65 |
| 911 | 3.15 | 1.90 | 1.25 |

ROA.1081. That means over one additional 911 call per property. Certainly, it

would be meaningful to a homeowner to need to call 911 against a neighbor even

once during a year. According to this data, STRs caused nearby 911 calls to increase

by 66 percent, and 311 calls to increase by 42 percent. It is not clear what sort of

bias made the author of the Dallas study conclude this impact was only "limited" and was not "meaningful," *see* ROA.1074,[8] but one thing is certain. It is rational for New Braunfels to look at the exact same *data* and conclude that STRs should be excluded from single-family and two-family neighborhoods.

The California study supports New Braunfels. ROA.1103-18. That report discussed only one city with comparative nuisance data on STRs—Santa Barbara. ROA.1108-09, 14. Santa Barbara's data showed fewer nuisance calls comparatively for STR properties during the four years 2006-09, but then there were *more* nuisance calls comparatively for STR properties during the six years 2010-15.

| Year | Nuisance Reports per 100 Non-STR Homes | Nuisance Reports per 100 STR Homes |
|---|---|---|
| 2010 | 0.43 | 1.01 |
| 2011 | 0.36 | 0.59 |
| 2012 | 0.42 | 0.59 |
| 2013 | 0.63 | 0.92 |
| 2014 | 0.58 | 1.51 |
| 2015 | 0.91 | 0.92 |
| Average | 0.555 | 0.923 |

*See* ROA.1116. Thus, during those most recent six full years of data, STRs caused nuisance calls to increase by 66 percent. *See id.* Yet, the authors concluded STRs do not result in "heightened nuisance issues." ROA.1113. Unlike with the Dallas

---

[8] The author did at least acknowledge there were "problematic STRs" in the city. ROA.1074; *see also* Eva Ruth Moravec, *Short-Term Rentals Cause a Long-Term Mess*, TEXAS OBSERVER (Sept. 11, 2023) (describing gunshots and sex trafficking at STRs in Dallas area); Lori Brown, *Nw. Dallas neighborhood frustrated with short-term rentals*, FOX 4 (July 12, 2022) (after an STR tenant's party with drugs and armed security guards, STR property owner replies, "It is a free country").

study, however, the cause for the California authors' bias is known. The authors, California Economic Forecast, performed this "custom research" for their client "Save the Rentals Santa Barbara," whose goal was to prevent Santa Barbara's STR ban. ROA.1878.[9] Looking at the Santa Barbara *data* alone, it is rational for New Braunfels to conclude that STRs should be excluded from single-family and two-family neighborhoods.

The New York City study supports New Braunfels. ROA.1120-59. That study concluded noise complaints decreased around STRs in New York City. ROA.1120. However, the study did not show an overall decrease in noise issues, because there was a "significant increase in street noise" in locations "where tourist attractions mostly take place." *Id.* In fact, the data showed the increase in "Street and Sidewalk Noise" was *greater* than the decrease in residence noise. ROA.1150-54. One can readily distinguish New York City with its prevalent late-night attractions drawing the tourist noise to those recreational areas, versus New Braunfels whose tourist attractions such as Schlitterbahn and river tubing would have long closed by nightfall, delivering the tourist noise right back to the STR properties. ROA.866, 1879. It is rational for New Braunfels to look at the exact

---

[9] Trumpeting this bias, the authors employed a partial year of data from 2016 that was plainly an outlier, and manipulated it to single-handedly make STR nuisance numbers less than non-STR numbers. ROA.1116. Without that 2016 "data," nuisance calls against STRs were higher in the aggregate across the entire decade of 2006 to 2015. *See id.*

same *data* and conclude STRs should be excluded from single-family and two-family neighborhoods in its community, because as STRs increase, noise increases.

The Austin data supports New Braunfels. The Texas state court opinion striking down Austin's STR rules (employing a heightened standard of review) discussed a city study that supposedly showed "significantly fewer" 311 and 911 calls. *See Zaatari v. City of Austin*, 615 S.W.3d 172, 189-90 (Tex. App.—Austin 2019, pet. denied). But that court misunderstood the study. When the study asked whether STRs "have" fewer calls, *see id.*, it was referring to calls *from* the STRs, not from neighbors about the STRs. The objective of the Austin study was to determine whether STRs "differ from other residential properties in their use of the 311 and 911 systems." *See* https://www.austintexas.gov /sites/default/files/files/ Auditor/Audit_Reports/Short-Term_Rentals__May_2012_.pdf. It is no surprise that fewer STR tenants called those phone numbers, given short-term visitors' lack of investment in the community. It is rational for New Braunfels to conclude that this very *data* supports regulations against STRs with their reduced community involvement.

Based on the above third-party studies, a city might choose either policy direction, prospectively allowing *or* prohibiting STRs. New Braunfels has chosen a balanced approach, allowing STRs generally, but prohibiting new such rentals in one- and two-family neighborhoods. That is rational.

*Third*, complaints from New Braunfels residents support this rational basis. The City's representative testified to this by affidavit.

> [I]n regulating STRs, the City has relied on information supplied by its own residents complaining of tenant behavior at STRs, plus the fact that those same complaints are not generally being brought to the City with respect to long-term tenants.

ROA.2056 ¶13.   This was consistent with the City's representative's deposition testimony.

> Q.    [W]hat evidence does the City base that [belief that STRs could produce more nuisances] on?
>
> A.    I think a lot of it is the citizen testimony to the Planning Commission and City Council, not just in adoption of the ordinances, but in every request for rezoning that comes to the Planning Commission or City Council for short-term rental.

ROA.1205 at 95:18-24.   Indeed, the City produced evidence of online complaints submitted regarding STRs in New Braunfels where the stated reason for the complaint was "noise," "trash," or "parking."  ROA.2056 ¶14, 2058.

However much Plaintiffs believe those complaints were no more frequent than regarding long-term residences, Plaintiffs—who hold the burden—did not produce any such *evidence* that might serve to negate the City's rational basis of nuisance abatement.  Plaintiffs' only rebuttal, instead, is that the City, in response to residents' complaints, neither issued citations nor terminated STR licenses.  It is not legally relevant, however, how the City did or did not respond to these nuisance issues.  *See Vance*, 440 U.S. at 102 n.20 (noting the irrelevance under rational basis

review that "other alternatives might achieve approximately the same results"). Plaintiffs' various arguments might be appropriate if "strict scrutiny" applied, as when STR regulations apply retroactively. *See Zaatari*, 615 S.W.3d at 202 ("the City's restrictions … would still fail strict scrutiny because the ordinance … can be achieved by less intrusive, more reasonable means, such as enforcement of the already-existing ordinances regulating noise"). But that is not the test here.

The nexus under the rational basis test need only be "at least debatable." *See Shelton*, 780 F.2d at 483. It was Plaintiffs' burden to show that nuisances are not similar or greater at STRs in New Braunfels than at other properties, and Plaintiffs have failed to raise a fact question on this point. *See id.* at 484-85. Indeed, one of the Plaintiffs conceded that, in his residential neighborhood adjacent to Schlitterbahn—with the Ordinance fully "in place"—he has never had any problems with unruly behavior, noise, drunkenness, or trash in the entire neighborhood. ROA.993-94. It is rational for the City to believe that guests residing in a home for only a few days are more likely to generate crowds, noise, and trash. *See Nekrilov*, 45 F.4th at 680-81; *Anderson v. Metro. Gov't of Nashville & Davidson Cty.*, No. M2017-00190-COA-R3-CV, 2018 Tenn. App. LEXIS 28, at *27 (Tenn. Ct. App. Jan. 23, 2018) (quoting a neighbor to an STR—"my children's friends have been replaced by bachelorette parties.").

In sum, summary judgment was appropriate on Plaintiffs' federal constitutional claims. All the parties' evidence, studies, and case law confirm it remains "at least debatable" that the City's STR regulation has the benefits of (1) preserving the residential character of City neighborhoods, (2) promoting the availability of affordable housing for City residents, and (3) combating nuisance-type behavior of tourists in residential neighborhoods. As a matter of law, at the summary judgment stage, the City has advanced legitimate rational bases to support its zoning ordinance, and Plaintiffs have failed to raise a fact issue that could negate those rational bases.

## II.    The City's STR prohibition does not violate the due course of law and equal protection clauses of the Texas Constitution.

With one exception (the *Patel* oppressiveness claim) discussed below, the same analysis as under federal constitutional law applies under Texas constitutional law. Municipalities have great deference in zoning decisions within their city limits. Summary judgment is equally appropriate against Plaintiffs' claims under the Texas Constitution.

### A.    The City's STR prohibition satisfies the rational basis test.

The above discussion of the rational basis test under the United States Constitution's due process and equal protection clauses applies equally to Plaintiffs' claims under the Texas Constitution. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 638 (Tex. 2008) (identical equal protection treatment); *NCAA v.*

45

*Yeo*, <u>171 S.W.3d 863, 868</u> n.14 (Tex. 2005) (identical due process treatment).  An ordinance survives the rational basis test so long as it is "fairly debatable" that it rationally relates to a legitimate governmental interest.  *See Mayhew v. Town of Sunnyvale*, <u>964 S.W.2d 922, 938</u> (Tex. 1998) .

Plaintiffs are incorrect that Texas applies a "heightened" rational basis test. Police power may be broadly exercised "for the purpose of promoting health, safety, morals, or the general welfare of the community."  *See Lombardo v. City of Dallas*, <u>73 S.W.2d 475, 476</u> (Tex. 1934).  This category of "general welfare" includes "the welding together of family ties," "better attention to the rearing of children," and "secur[ing] quiet residence districts."  *See id.* at 482-83.  Excluding business-type conduct such as STRs need not be "a declaration that such places are nuisances or that they are to be suppressed as such," but can be done simply to reduce disorder. *See id.* at 484-85.  Otherwise, absent such regulations, "the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed."  *See id.* at 485.[10]  Thus, under Texas law, it is a legitimate governmental interest to minimize the potential adverse impacts resulting from the increase in STRs in residential neighborhoods.  *See Draper v. City of Arlington*, <u>629 S.W.3d 777, 792-94</u> (Tex. App.—Fort Worth 2021, pet. denied).

---

[10] The Texas Supreme Court in *Lombardo* observed that its earlier *Spann* opinion was inapplicable in the context of a "comprehensive zoning plan," given that the 1921 *Spann* opinion predated the 1927 Texas zoning statutes.  *See Lombardo*, <u>73 S.W.2d at 478</u>.

A court cannot set aside a zoning action under the Texas Constitution unless the action has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety, or the public welfare. *Mayhew*, 964 S.W.2d at 938. A city need only rationally believe that the ordinance promotes the city's objectives. *Id.*

Texas zoning statutes reflect the breadth of these legitimate governmental interests, allowing regulation of the "use" of buildings and land for residential and other purposes, *see* TEX. LOC. GOV'T CODE § 211.003(a)(5), so as to promote "health and the general welfare," *see id.* § 211.004(a)(3), while taking into account "the character of each district and its peculiar suitability for particular uses," *see id.* § 211.005(b).

To date, not one single Texas appellate court has struck down STR regulations under the rational basis test. Indeed, the *opposite* is true. Only one Texas appellate case thus far has applied the rational basis test to a city's STR prohibition in residential neighborhoods, and that court of appeals upheld the municipal regulation. *See Draper*, 629 S.W.3d at 794.[11] The only cases Plaintiffs can cite that have struck

---

[11] Three Texas state courts of appeals, on interlocutory appeal, have allowed plaintiffs' claims against STR regulations to proceed, but all three conducted *no rational basis review*, saving that review for the "case's merits" on remand. *See City of Dallas v. Dallas Short-Term Rental Alliance*, No. 05-23-01309-CV, 2025 Tex. App. LEXIS 743, at *6-8 (Tex. App.—Dallas Feb. 7, 2025, no pet. h.); *City of Grapevine v. Muns*, 651 S.W.3d 317, 347 (Tex. App.—Fort Worth 2021, pet. denied); *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.). In the *City of Dickinson* case, the trial court judgment applying the rational basis test remains pending at the Houston court of appeals in Case No. 01-24-00684-CV.

47

down a city's STR regulations were not applying the rational basis test, but rather a heightened standard of review. *See, e.g.*, *Zaatari*, 615 S.W.3d at 188-92.[12]

Therefore, for the same reasons the City's STR prohibition satisfies the rational basis test under the United States Constitution, the STR prohibition also satisfies the rational basis test under the Texas Constitution.

### B.    The City's STR prohibition satisfies the *Patel* oppressiveness test.

One other test besides the generally-applicable rational basis test may apply under the Texas due process clause. Certain economic regulations may violate the Texas Constitution's due course of law clause if their "actual, real-world effect as applied to the challenging party … is so burdensome as to be oppressive in light of the governmental interest." *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). There are multiple reasons why summary judgment was appropriate against Plaintiffs' *Patel* oppressiveness claim.

*First*, *Patel*'s "oppressiveness" test has not been applied to zoning regulations, but only to laws that operate as an absolute bar against operating in one's chosen profession. *See id.* at 74 ("to earn an honest living in the occupation of one's choice"). The Texas Supreme Court has held that *Patel* is to be "properly limited to" its particular context. *See Hegar v. Tex. Small Tobacco Coal.*, 496 S.W.3d 778,

---

[12] The federal *Town of Hollywood Park* opinion, too, involved a heightened standard of review. ROA.1170-73.

788 n.35 (Tex. 2016). Thus, Texas courts have confined *Patel*'s oppressiveness test to a bar against an individual's chosen profession. *See, e.g.*, *Garrett v. Tex. St. Bd. of Pharm.*, No. 03-21-00039-CV, 2023 Tex. App. LEXIS 454, at *16-17 (Tex. App—Austin Jan. 25, 2023, pet. denied) (holding "*Patel* is inapposite" because plaintiffs faced no "barrier of entry" to a "chosen profession"); *Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co.*, 537 S.W.3d 647, 656-57 (Tex. App.— Austin 2017, pet. denied) (*Patel* claim is for law that "prevented [plaintiffs] from operating within their chosen trade"). This case involves real property regulation, not economic regulation. And, indeed, Plaintiffs concede they "do not seek to use their properties commercially." *See* Appellant's Br. at 38.

To counter this post-*Patel* jurisprudence, Plaintiffs rely on cases discussed in *Patel* in the court's crafting its oppressiveness test, such as the 1905 *Houston & Texas Central* case and the 1881 *Milliken* case. *See Houston & Tex. Cent. Ry. Co. v. City of Dallas*, 84 S.W. 648 (Tex. 1905); *Milliken v. City Council of Weatherford*, 54 Tex. 388 (1881). But those century-old cases are not indicative of the present state of Texas law. *See Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 671-72 (Tex. 2022) (concurring op.) ("To put it mildly, *Milliken* and *Houston & Texas Central* are not foundational pillars for Texas due-course jurisprudence."). There are only two due process tests endorsed by the Texas Supreme Court: the rational basis test and the *Patel* oppressiveness test. Plaintiffs'

insistence that there must be some other legal test out there by which they might possibly prevail is essentially an admission of their lawsuit's deficiency.

***Second***, a *Patel* oppressiveness claim requires a vested right. *See Tex. Dep't of State Health Servs.*, 647 S.W.3d at 654-56. This Court has recently indicated that the ability to engage in STRs is not a vested property right. *See Hignell-Stark*, 46 F.4th at 324-25 ("An STR license is 'a privilege, not a right.'"). The Sixth Circuit, likewise, recently upheld a prohibition against STRs on this basis, holding that homeowners who did not apply for STR permits prior to an ordinance prohibiting such new permits lacked "a legitimate claim of entitlement" to support a substantive due process claim. *See Moskovic v. City of New Buffalo*, No. 23-1165, 2023 U.S. App. LEXIS 33273, at *12 (6th Cir. Dec. 14, 2023). Under Texas case law, too, a property owner may only have a "narrow vested" right to *continue* an "existing" STR use. *See Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562, 587 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Having purchased their properties *after* the STR prohibition was adopted, where STRs were not already being done, Plaintiffs lack a property interest sufficient to assert due process claims (in contrast to a takings claim as was at issue in Plaintiffs' cited case law).

Multiple recent federal district court opinions confirm this simple reality that Plaintiffs do not have a vested right to commence STRs. *See Martinez v. Town of Clarkstown*, No. 23-CV-5364, 2024 U.S. Dist. LEXIS 162132, at *8-9 (S.D.N.Y.

50

Sept. 9, 2024) ("because the issuance of the short-term rental permit was a discretionary process, Plaintiff cannot be said to have had a property interest in the permit that required protecting"); *Villanueva*, 2024 U.S. Dist. LEXIS 85735, at *34 ("they did not have a settled right to lease their property for short terms with no restrictions because they bought their property at a time when the Village had already established a discretionary permitting process"); *Hignell*, 2024 U.S. Dist. LEXIS 34030, at *40-41 ("property owners do not have a vested right to lease their property for profit in any certain way, without restriction").

That is the legal context in which the district court rejected Plaintiffs' alleged right against "limitations that were in place" when they purchased their properties. ROA.2151-52. Plaintiffs cannot retroactively generate a vested right to engage in STRs, when they purchased properties where STRs were already prohibited and had never been grandfathered—especially when Plaintiffs could have freely purchased different homes where STRs are allowed.

*Third*—and most importantly—the record *evidence* proves there is no oppressiveness. This is not a complete confiscation of rights. *See, e.g.*, *City of W. Univ. Place v. Ellis*, 134 S.W.2d 1038, 1041 (Tex. 1940) ("defendant's lot is practically worthless as residential property"). Plaintiffs can live at their properties, rent their properties to long-term tenants, or sell their properties and purchase at a new location in the City (or even just outside the City) where STRs remain allowed.

51

ROA.876 ¶12.  Within the City, that includes multiple other zoning districts, including condominiums, or even single-family homes and duplexes located in multi-family or mixed-use zones.

> The plaintiffs can lease the properties on a long-term basis, live at the properties, or sell the properties.  There is no total taking where the government seizes only one strand in the "bundle" of property rights.

*Nekrilov*, 45 F.4th at 671.

A *Patel* claim is an as-applied challenge.  *See Patel*, 469 S.W.3d at 87. Plaintiffs' own deposition testimony defeats their claim of oppressiveness.  Plaintiffs are gainfully employed, earn significant incomes, and own multiple properties. ROA.907-18 (Rafael Marfil), 942-44 (Enrico Marfil), 963-64 (Naomi Marfil), 980-83 (Mathes), 998-1000 (Olveda), 1023-24 (Rohlack).  Rafael Marfil successfully rents out his New Braunfels property to long-term tenants, with annual revenues generally covering expenses.  ROA.928-29.  For Enrico and Naomi Marfil's next-door property, annual revenues from long-term leases are "enough" to pay their property expenses, and they joined this lawsuit merely to "have more flexibility" in leasing to tenants.  ROA968-69, 75.  Mathes rents out both houses on his New Braunfels property on a long-term basis, and plans to keep the property because of its separate garage apartment that he and his family "really enjoy" several times a year.  ROA.986-90.  Olveda rents out his New Braunfels house to long-term tenants, and plans to keep the property in his family even if he "can't do short-term

52

rentals." ROA.1008-13. Rohlack plans to build a house on his New Braunfels property and live there, regardless of whether STRs are permitted or prohibited. ROA.1027-28.

Plaintiffs have successfully maintained their properties for 14 years notwithstanding the STR prohibition, and there is no evidence any of them might become unable to do so in the future. As the district court held, the summary judgment evidence shows that any burden on Plaintiffs does not arise to an "oppressive" level. ROA.2151-52.

The slightness of Plaintiffs' burden is made even more so when measured against the City's legitimate interests (discussed above) in supporting thriving residential neighborhoods, preserving affordable housing for local residents, and minimizing short-term visitors' nuisance behavior in those neighborhoods. There is nothing inherently oppressive about requiring home rentals in residential neighborhoods be made to tenants whose use comports more closely to a residential character, rather than to tourists.

Plaintiffs' as-applied claim that the City's prohibiting them from engaging in STRs "is so burdensome as to be oppressive" simply lacks evidentiary support. Plaintiffs acknowledge they have an "unfettered right to lease" their houses for 31-day periods or more. ROA.187. Plaintiffs have "stipulated that they can still make money [on the properties], even absent short-term renting." ROA.847. As

53

one Texas court held, applying *Patel*, plaintiffs "do not possess a constitutionally protected right to a particular amount of profit" in their economic activities. *See Tex. Dep't of Motor Vehicles v. Fry Auto Servs.*, 584 S.W.3d 138, 143 (Tex. App.— Austin 2018, no pet.).

Therefore, summary judgment was appropriate on Plaintiffs' state constitutional claims. The City advanced legitimate rational bases to support its STR regulation, and Plaintiffs failed to raise a fact issue that could negate those rational bases. Likewise, to the extent the *Patel* oppressiveness test is even applicable here, Plaintiffs' inability to engage in STRs is not "so burdensome as to be oppressive."

<div align="center">

**PRAYER**

</div>

Appellee City of New Braunfels, Texas, prays that this Court affirm the district court's summary judgment, and for all other further relief to which the City of New Braunfels, Texas, may be entitled.

Respectfully submitted,

By: */s/ Ryan D. V. Greene*
  Ryan D. V. Greene
   TX State Bar No. 24012730
   rgreene@terrillwaldrop.com
  TERRILL & WALDROP
  810 West 10th Street
  Austin, Texas  78701
  Telephone:  (512) 474-9100
  Facsimile:  (512) 474-9888

*Attorney for City of New Braunfels, Texas*

<div align="center">

54

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2025, I electronically filed this Brief of Appellee City of New Braunfels, Texas, with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that counsel for Appellants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<div align="right">

*/s/ Ryan D. V. Greene*
Ryan D. V. Greene

</div>

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fifth Circuit Rule 32.2 and 32.3, the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and the typeface requirements of Fed. R. App. P. 32(a)(6).

1.    Exclusive of the exempted portions in Fed. R. App. P. 32(a)(7) and Fifth Circuit Rule 32.2, the brief contains 12,574 words.

2.    The brief has been prepared in proportionally spaced typeface using:

Software Name and Version: Microsoft Office Word 2010
Typeface Name: Times New Roman
Font Size: 14 point

3.    The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), may result in the court's striking the brief and imposing sanctions against the person signing the brief.

<div align="right">

*/s/ Ryan D. V. Greene*
Ryan D. V. Greene

</div>